THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD BENFORD, Defendant-Appellant.

First District (4th Division)    No. 1—03—0607

Opinion filed June 30, 2004.

Michael J. Pelletier and Jay Wiegman, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Andrea Kovach, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a jury trial, defendant, Reginald Benford, was convicted of first degree murder for the shooting death of fellow gang member Davon Cook. Defendant was sentenced to 40 years' imprisonment. On appeal, defendant questions whether: (1) he was denied effective assistance of counsel; (2) the circuit court considered the murder itself as an aggravating factor in sentencing; (3) his 40-year sentence is excessive; and (4) he was admonished properly.

Prior to trial, defense counsel informed the circuit court that he would be filing a motion to suppress defendant's inculpatory statement based on his "lack of ability to understand *Miranda*." The court ordered a fitness evaluation for that purpose. Dr. Stafford C. Henry, a staff psychiatrist for the court's forensic clinical services, evaluated defendant and informed the court by letter that "defendant was able to knowingly and intelligently waive his *Miranda* warnings."[1] At the subsequent court appearance the State suggested, and defense counsel agreed, that defendant should be evaluated as to his fitness to stand trial. Dr. Michael Rabin, a licensed clinical psychologist, evaluated defendant and advised the court by letter that defendant had a mildly mentally retarded level of intellectual functioning with a verbal IQ of 63.

On May 8, 2000, defense counsel moved to suppress defendant's statement. At the hearing, on September 5, 2000, counsel moved to

---

[1]Months later, Dr. Henry submitted a second letter of evaluation to the court, in which he stated that after consideration of additional materials, his prior conclusions remained unchanged.

withdraw his motion to suppress. Thereafter, the State successfully moved to exclude evidence of defendant's IQ and any statement regarding his "capacity to knowingly and intelligently waive his *Miranda* warnings."

During jury selection, the circuit court informed the jurors that defendant is presumed innocent until the State proves defendant's guilt beyond a reasonable doubt. The court inquired of the venire whether anyone would be unable to follow the law or sign a verdict form of not guilty if warranted by the evidence. There was no response from the venire. The court then asked questions of the individual jurors, sometimes inquiring whether they could be fair to both sides. Certain jurors informed the court they had been a victim of a crime or were involved in a legal case. In those situations, the court inquired as to whether that juror could be fair to both sides. Each selected juror answered affirmatively to the question of fairness. Defense counsel exercised three peremptory challenges during voir dire.

The evidence adduced at trial revealed that Cook was shot on August 18, 1998, at the intersection of 44th and Princeton Streets in Chicago. He died weeks later, on September 9, 1998. The State first called Kenneth McCullough to testify as an eyewitness to the shooting. McCullough, defendant and Cook were each members of the "Mickey Cobras" street gang for several years. On the day of the shooting, McCullough observed defendant, 21 years old at the time, driving around in his blue, four-door Chevrolet with Minnesota license plates. He had seen defendant with Cook at the corner of 44th and Princeton earlier that day. At trial, McCullough denied witnessing the shooting and speaking to police at the scene immediately after. Instead, McCullough stated, he had been on the next block and the first time he spoke with police was when Detective Cliff Gehrke brought him to the police station, where he allegedly was beaten by detectives.

About one month after the shooting, Assistant State's Attorney (ASA) Maureen McGee and Detective Gehrke went to McCullough's home. They spoke to him about the shooting, and McCullough signed a statement penned by McGee. He testified that he signed the statement out of fear and impugned the veracity of its contents. McGee testified for the State, wherein she published McCullough's written statement to the jury. The statement related that McCollough was present with Cook, both of whom were unarmed, when defendant drove up in his Chevrolet and exited. Cook and defendant walked toward each other. Defendant fired two shots at Cook, who fell to the ground. Gehrke also testified that he showed a photo array to McCullough about two weeks after the shooting, from which McCullough identified defendant as the shooter and defendant's Chevrolet to be a car parked at 44th and Shields Streets.

The following day, Detective Gehrke brought McCullough to speak with ASA Tom Mahoney. After speaking with Mahoney, McCullough testified before the grand jury. At trial, McCullough stated that his grand jury testimony was fabricated, motivated by his fear of police. Mahoney testified at trial and published McCullough's grand jury testimony to the jury. That testimony related essentially the same facts as McCullough's written statement: defendant pulled up in his car; he and Cook accosted one another; and defendant fired two shots at Cook, who attempted to move but was shot in the upper back.

The State also called as a witness Officer Frank Casale, who testified that he arrived at the scene shortly after Cook had been shot. Casale spoke to emergency personnel, then asked onlookers if they witnessed the shooting. He stated that McCullough "came up to [him] and told [him] that he was with the victim Cook at the time of the shooting," and that the shooter went by the nickname of "Reg." This was Casale's only conversation with McCullough.

Defendant was arrested by the Federal Bureau of Investigation (FBI) in Grand Rapids, Michigan, on December 30, 1998. He had been residing with his girlfriend and was arrested while exiting her apartment. Defendant was taken to a local jail where he was interviewed by FBI Agent Michael Heffron. According to Heffron, defendant told him that on the day of the shooting, he was driving a friend home when he reached the intersection of 44th and Princeton. There, he was approached by Cook, who was defendant's supervisor in the gang. Cook told defendant he would have to work security for the gang that night. Defendant explained to Heffron that this meant he was to stand on the street and yell "poe-poe" when he saw police. That day, Cook twice told defendant he would have to work security that night. Defendant briefly departed and drove to a nearby store. Upon returning to the area of the intersection, Cook again approached defendant. Using a .38-caliber revolver, defendant shot Cook and tossed the gun out of his car as he drove away.

Upon being returned to Chicago after his arrest, defendant made admissions to ASA Adam Monreal, who wrote a summary of the statements. Monreal published the summary to the jury through his testimony. The summary contained essentially the same facts as those recounted by Agent Heffron, who interviewed defendant in Michigan.

The State rested and defendant moved for a directed verdict, which the circuit court denied. The defense presented one witness, defendant's girlfriend, Thymmberlie Stevenson. She stated that defendant had been afraid of Cook and that the men argued several times a week during that summer because defendant sought to disassociate from the gang. Stevenson stated that Cook "was basically getting on

[defendant] about not coming to service, not paying dues or doing security," and reiterated that Cook spoke with defendant almost every day about working security. She additionally stated that she and defendant recently had been threatened several times by members of defendant's gang.

Following argument and 45 minutes of deliberations, the jury found defendant guilty of first degree murder. At the sentencing hearing on November 13, 2001, the circuit court denied defendant's motion for new trial and sentenced him to 40 years in the custody of the Illinois Department of Corrections. Defendant timely appeals.

## I

■ Defendant claims on appeal that he was denied the effective assistance of defense counsel for failing to: (a) tender jury instructions on lesser-included offenses; (b) move to suppress his inculpatory statements; (c) object to the State's use of McCullough's prior inconsistent statement as substantive evidence; and (d) question the jurors about prejudice against street gangs and their ability to follow the basic legal principles.

Ineffective assistance of counsel is established when defendant shows (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that, but for counsel's shortcomings, a reasonable probability exists that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 524-25, 473 N.E.2d 1246 (1984). Notably, this standard does not require that counsel's conduct more likely than not altered the outcome of the case (*People v. Patterson*, 192 Ill. 2d 93, 122, 735 N.E.2d 616 (2000)); instead, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reviewing court must indulge in a strong presumption that counsel's performance was competent and that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063 (1998). If a claim of ineffectiveness of counsel may be disposed of on the ground that defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance under the deficiency prong. *People v. Eddmonds*, 143 Ill. 2d 501, 511-12, 578 N.E.2d 952 (1991).

## A

Defendant faults counsel for failing to tender jury instructions in support of the legal justification theory he advanced at trial. According

to defendant, counsel theorized the murder was a result of either provocation or defendant's recklessness. He points to his opening statement, where counsel essentially conceded defendant's guilt, stating, "we don't have a whole lot of dispute over what took place on August 18 of 1998[,] in terms of what physically happened. [Cook] was there, [McCullough] was there, [defendant] was there. [Defendant] had a gun. And [Cook] was in fact shot. And he died as a result of that shooting. What we do think that is in dispute here is what led up to that shooting." Counsel told the jury that "[defendant] shot the weapon that day, but not with the intent to kill [Cook] or with an intent to do great bodily harm to [Cook]. But to get [Cook] to leave him alone, to back him off, to get him away."

This theory of justification, defendant argues, was advanced by counsel throughout trial. Counsel established provocation through Agent Heffron, that defendant had been confronted twice by Cook about working security and defendant refused; through ASA Monreal, that defendant and Cook had argued in the past, and that defendant carried a gun for protection; and through Detective Gehrke, that defendant had been trying to break free from his ties with the gang.

Defendant suggests counsel successfully created the inference of recklessness through eliciting from the medical examiner that the trajectory of the shot could not be determined, and in closing argument, where counsel implied that defendant fired the weapon low to scare Cook, stating that Cook "ducked low into the shot," and defendant fired "[n]ot because he wanted to shoot him in the head or shoot him in the chest or kill him or do great bodily harm but to get him off his back, to get him away from him." Defendant asserts that it was counsel's duty to consummate the strategy by tendering instructions that would have allowed the jury to factor in justification.

Relying almost exclusively on *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir. 1987) (*Lane*), defendant argues that, as in *Lane*, counsel defaulted in his obligation to tender instructions regarding the mitigated offense of second degree murder.[2] In *Lane*, the Seventh Circuit Court of Appeals held that the "all-or-nothing approach of trial counsel *** left [defendant] with no defense at all." *Lane*, 819 F.2d at 803. The court reasoned that, in light of defendant's concession that he shot decedent, the jury "would have no alternative but to find [defendant] guilty." *Lane*, 819 F.2d at 803-04. In finding counsel ineffective, the court stated that counsel's belief that the jury would acquit defendant of murder could be based only on the hope

---

[2]The State there appealed from a magistrate's order granting a petition for a writ of *habeas corpus* to defendant under 28 U.S.C. § 2254 (1982).

that the jury would, for some reason, fail to follow instructions, because counsel's conduct "deprived them of the opportunity to find other than they did." *Lane*, 819 F.2d at 804.

Prior to *Lane*, the case was before the Illinois Supreme Court, which affirmed the appellate court in *People v. Barnard*, 104 Ill. 2d 218, 470 N.E.2d 1005 (1984) (*Barnard*). The court surmised that counsel's strategy was to present the jury only with the options of finding defendant guilty or not guilty of murder so as to avoid a compromise verdict. Counsel seemingly believed that if the jury were given these two options, it likely would find him not guilty; but if given the choice of manslaughter, the jury would be less likely to acquit him. The court held that counsel's strategy did not amount to ineffective assistance. *Barnard*, 104 Ill. 2d at 231-32.

The decision of whether to submit an instruction on a lesser-included offense is considered to be one of trial strategy, which has no bearing on the competency of counsel, who may strategize legitimately that it was better for the jury not to have the choice of the lesser-included offense in the hope that it would be more inclined to acquit. *People v. Dominguez*, 331 Ill. App. 3d 1006, 1015, 773 N.E.2d 1167 (2002); *People v. Nunez*, 319 Ill. App. 3d 652, 659, 745 N.E.2d 639 (2001); *People v. McIntosh*, 305 Ill. App. 3d 462, 471, 712 N.E.2d 893 (1999). Merciful jurors may disregard even overwhelming proof of culpability and acquit entirely, or convict of a lesser crime than the evidence warrants; however, where lesser-offense instructions are given, a jury may be induced to find defendant guilty of the lesser offense rather than to continue the debate as to his innocence. *People v. Taylor*, 36 Ill. 2d 483, 490-91, 22 N.E.2d 66 (1967). The determination of whether to submit a lesser-included offense instruction is:

> "a calculated risk on the part of defense counsel based on his or her assessment of the evidence and the perceived likelihood the jury will convict *** defendant rather than acquit altogether. If the instruction is given to a jury that would have chosen to acquit on the greater offense, then counsel has effectively subjected defendant to the risk of conviction on an uncharged offense when the client might otherwise have avoided any conviction. Alternatively, if defense counsel fails to request the instruction defendant may be found guilty of the greater offense because the jury, in considering closely balanced evidence, believed it should find defendant guilty of a crime under the circumstances. It is these types of strategic calculations that a court will not second-guess." *People v. Brocksmith*, 162 Ill. 2d 224, 232-33, 642 N.E.2d 1230 (1994) (Freeman, J., concurring, joined by Bilandic, C.J.).

*People v. Gilyard*, 237 Ill. App. 3d 8, 23-24, 602 N.E.2d 1335 (1992).

In the case *sub judice*, counsel elected to have the jury either convict defendant of first degree murder or acquit him outright, the "all-or-nothing" defense. Although this tactic met with seeming disapproval by the Seventh Circuit in *Lane*, 819 F.2d at 804, our supreme court, nonetheless, has recognized its legitimacy. *Barnard*, 104 Ill. 2d at 231-32.[3] In light of the State's evidence, namely, McCullough's eyewitness account of the shooting in conjunction with defendant's confession, counsel employed the strategy that it was better for the jury not to be presented with the choice of lesser offenses in the hope that the jurors would be more inclined to acquit. Counsel likely believed the evidence supporting either provocation or recklessness was insufficient to sustain a finding of guilt on a lesser offense. Counsel's strategy was unsuccessful, but otherwise legitimate, in the context of the defenses available. Defendant was not denied the effective assistance of counsel.

### B

■ Defendant also contends he was unable to waive his *Miranda* rights knowingly and voluntarily, and that counsel should not have withdrawn his motion to suppress his inculpatory statements as "there was no danger or harm" in moving for suppression. Defendant believes counsel's decision, which was made in response to receiving evidence of defendant's mental aptitude from Drs. Henry and Rabin, was ill-assessed; instead, the issue should have been presented to the circuit court. He asserts that counsel should not have allowed Dr. Henry's evaluation to supercede Dr. Rabin's assessment, which placed defendant in the bottom 1% of the population for intellectual ability. Although Dr. Rabin did not evaluate defendant's ability to comprehend *Miranda*, defendant believes the motion would have enjoyed a likelihood of success.

The decision of whether to file a motion to suppress is a matter of trial tactics and has little bearing on competency of counsel. A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *People v. Peterson*, 248 Ill. App. 3d 28, 38, 618 N.E.2d 388 (1993). Defendant is entitled to competent, not perfect, representation, and the fact that a defense

---

[3]The supreme court implicitly has sanctioned the use of the "all-or-nothing" strategy in the context of examining the circuit court's role in giving a lesser-offense instruction (*People v. Carter*, 208 Ill. 2d 309, 802 N.E.2d 1185 (2003); *People v. Garcia*, 188 Ill. 2d 265, 721 N.E.2d 574 (1999); *People v. Taylor*, 36 Ill. 2d 483, 224 N.E.2d 266 (1967)), and in determining whether the decision rests ultimately with defense counsel or defendant (*People v. Brocksmith*, 162 Ill. 2d 224, 642 N.E.2d 1230 (1994)).

tactic was unsuccessful does not demonstrate incompetence. *People v. Williams*, 235 Ill. App. 3d 638, 651, 601 N.E.2d 1070 (1992).

Here, Dr. Henry's assessment established that defendant could understand *Miranda*. Also, given that the State successfully moved to preclude any statement at trial regarding defendant's capacity to knowingly and intelligently waive his *Miranda* rights, the motion to suppress would have proved futile. Assuming, *arguendo*, that counsel's motion would have been successful, McCullough's written statement and grand jury testimony were sufficient alone to support defendant's conviction; in the absence of defendant's statement, the outcome of trial would not have been altered. There is a strong presumption that counsel's decision to forego the motion was the result of trial strategy and does not amount to ineffective representation.

## C

■ Defendant also believes counsel was ineffective for failing to object to the State's use of McCullough's prior inconsistent oral statement as substantive evidence during closing argument. At trial, McCullough denied telling police, at the scene of the shooting, that he witnessed defendant shoot Cook. The State, however, impeached that testimony through Officer Casale, who averred: McCullough "c[a]me up to me and told me that he was with the victim Cook[ ] at the time of the shooting." The comments of which defendant complains occurred during closing argument when the prosecutor stated, "[McCullough] was there and he saw. [McCullough] was picked out as a person who saw what happened. *** Officer Casale[ ] told you that. [Casale] didn't point to him and say, [']come here. You are the eyewitness in this case.['] No, that's not what happened. He went and talked to [McCullough]. [McCullough] told him, [']Reg [defendant] shot Davon in the back. I saw it. I was standing there at 44th Place and Princeton and that's what happened.[']" Defendant claims the prosecutor pointed to Casale's testimony, not to attack McCullough's credibility, but to prove defendant's guilt. He argues, citing *People v. Redd*, 135 Ill. 2d 252, 553 N.E.2d 316 (1990), that the statement is inadmissible as substantive evidence since McCullough never acknowledged the statement in court, as required by section 115—10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1 (West 2000)).

A prior inconsistent statement may be used properly as substantive evidence where the witness's prior statement is (1) inconsistent with his trial testimony; (2) subject to cross-examination; (3) within his personal knowledge; and (4) acknowledged at trial. *People v. Hastings*, 161 Ill. App. 3d 714, 719, 515 N.E.2d 260 (1987). Section 115—10.1 of the Illinois Code of Criminal Procedure (section 115—10.1)

requires that "the witness [must have] acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding." 725 ILCS 5/115—10.1 (West 2000).

In the instant case, the requirements of section 115—10.1 were not satisfied since McCullough denied speaking to Officer Casale about the shooting. Nevertheless, the State did not use McCullough's oral statement substantively to argue defendant's guilt, but to explain the discrepancy between McCullough's in-court testimony and his prior statements comprised of his grand jury testimony and written statement, both of which satisfy the requirements of the hearsay exception codified in section 115—10.1.

Immediately after the complained-of remarks in closing argument, the prosecutor stated, "[t]hat's how Detective Gehrke got involved and that's how [Gehrke] went and talked to McCullough because of what McCullough told the officers on the scene." He continued, "[n]ow, when my partner was asking McCullough questions yesterday, he was very evasive. He denied, first of all, being there. He said he was at a different block. He didn't identify [d]efendant. He didn't tell anybody it was Reg. He didn't identify a car later. But what you did hear was he gave a handwritten statement to a state's attorney, Maureen McGee, and he gave testimony in front of the grand jury under oath the next day on September 18." The prosecutor then explained that McCullough's in-court testimony contradicted his prior written statement and grand jury testimony, and that those statements could be considered substantively.

Even if the jury had considered the prior oral statements as proof of guilt, the State used the statements to connect the investigative chain establishing how police secured McCullough, the State's strongest source of evidence against defendant. More significantly, defendant incurred no prejudice where the jury was exposed to the same information as the complained-of remarks in McCullough's grand jury testimony and written statement. Because the State referenced Casale's testimony about McCullough's prior oral statement to illustrate his impeachment to the jury, and not as substantive evidence, counsel cannot be deemed ineffective for failing to object.

### D

■ Defendant's final claim of ineffectiveness involves counsel's alleged passivity with respect to jury selection. Specifically, he claims counsel was deficient for not attempting to ascertain: (1) whether the jury would abide by the legal principles as set forth in Supreme Court

Rule 431(b) (177 Ill. 2d R. 431(b)) (Rule 431) and *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984) (*Zehr*); and (2) whether the jurors would be prejudiced by evidence of defendant's gang involvement, citing *People v. Strain*, 194 Ill. 2d 467, 742 N.E.2d 315 (2000) (*Strain*). Defendant acknowledges the circuit court told the jury en masse about the presumption of innocence, explained that defendant was not required to present evidence and that the State had the burden of proving defendant guilty beyond a reasonable doubt. The court did not tell the jury that defendant's failure to testify could not be used against him. His complaint, however, is that the jurors were not asked whether they understood or accepted these principles. Instead, the jurors were asked only whether they understood and accepted that the State was required to prove defendant guilty beyond a reasonable doubt. Defendant maintains that the relevant inquiry is whether the questions and procedures employed to gauge juror competency created a reasonable assurance that any prejudice or bias would be discovered.

The right to an impartial jury is fundamental to due process and any infringement of that right requires reversal. One purpose of *voir dire* is to filter out and eliminate prospective jurors who are not impartial. *People v. Aleman*, 313 Ill. App. 3d 51, 59, 729 N.E.2d 20 (2000). Essential to the qualification of jurors is that they know that defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. *Zehr*, 103 Ill. 2d at 477.

Under Rule 431(b): "[i]f requested by *** defendant, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that *** defendant is presumed innocent of the charge(s) against him or her; (2) that before *** defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that *** defendant is not required to offer any evidence on his or her own behalf; and (4) that *** defendant's failure to testify cannot be held against him or her." 177 Ill. 2d R. 431(b). The rule is intended to ensure compliance with the requirements of *Zehr* and "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments.

In the case *sub judice*, the circuit court neglected to inform the jurors that defendant's failure to testify cannot be held against him; however, it did explain the presumption of innocence, the State's burden to prove defendant guilty, and that defendant is not required to offer any evidence on his own behalf. It was not until the court

instructed the jury before deliberations that it stated, "[t]he fact that [d]efendant did not testify must not be considered by you in any way in arriving at your verdict." The court did not inquire of the jurors individually as to whether they could abide by the legal principles, nor did defense counsel request the court to inquire. Counsel also did not pose questions geared toward gang bias. Nonetheless, the *voir dire* as conducted did not deprive defendant of a fair trial and does not evince ineffective assistance of counsel.

Under Rule 431(b) and *Zehr*, defendant's decision to ask jurors individually as to whether they understand and accept the principles of law is not mandatory, but optional. Here, defense counsel elected not to exercise his right to pose individual questions. Although counsel failed to have the circuit court inform the jurors regarding defendant's decision not to testify, the jury was made aware of this principle just prior to deliberating, thereby curing any error.

As to counsel's failure to inquire about potential gang bias, the State asserts correctly that *People v. Furdge*, 332 Ill. App. 3d 1019, 774 N.E.2d 415 (2002), is directly on point. The *Furdge* court noted that the decision as to whether to question potential jurors on a particular subject is considered to be one of trial strategy, which has no bearing on the competency of counsel. *Furdge*, 332 Ill. App. 3d at 1026. Although the supreme court has recognized that street gangs are regarded with considerable disfavor by other segments of our society and that, particularly in metropolitan areas, there may be strong prejudice against street gangs (*Strain*, 194 Ill. 2d at 477), no evidence exists in the record to support the claim that defendant was prejudiced by counsel's failure to inquire about potential gang bias. "It is reasonable that defense counsel as a matter of trial strategy concluded that questioning the venire about bias against gangs would serve no purpose since both the victim and defendant were similarly situated. Here, where the gang evidence was limited to explain motive and the victim was also a gang member, defense counsel could have reasonably concluded as a matter of trial strategy that his questioning, which could serve to unduly emphasize the gang issue, outweighed any potential prejudice a venire member may have had." *Furdge*, 332 Ill. App. 3d at 1026.[4]

Defendant does not allege that any juror displayed a potential

---

[4]The court stated further, "in the context of this case we do not find that [*People v. Strain*, 194 Ill. 2d 467, 742 N.E.2d 315 (2000),] supports defendant's claim of ineffective assistance of trial counsel. *Strain* did not address whether defense counsel was ineffective for failure to question potential jurors about gang bias. Rather, *Strain* addressed whether the trial court, after questioning

gang bias and dismisses the fact that the jurors each agreed that they could decide the case fairly. Where defendant cannot overcome the presumption that counsel's decision was trial strategy (here, to avoid overemphasizing gang membership), his ineffectiveness of counsel claim fails.

## II

■ Defendant complains that at sentencing the circuit court considered improperly the fact that defendant killed a man. Specifically, defendant points to the court's statements:

> "While I appreciate the fact that you have taken your first step toward rehabilitation by admitting your guilt, the minimum sentence here would really deprecate the seriousness of the offense as well as the fact that you killed a man. You armed yourself with a handgun, walked onto the streets of Chicago and shot a man dead. I don't know if the fact that he was a fellow gang member is aggravation or mitigation. I do know you shot a man dead on the streets of Chicago. For that your sentence is 40 years in the Illinois Department of Corrections."

Defendant relies on *People v. Saldivar*, 113 Ill. 2d 256, 497 N.E.2d 1138 (1986) (*Saldivar*), where defendant's cause was remanded for resentencing where the circuit court found the primary factor in aggravation to be " 'the terrible harm that was caused to the victim' " and noted that defendant caused a human life to be taken. *Saldivar*, 113 Ill. 2d at 264. Defendant also claims that the court considered only one factor in mitigation: namely, defendant's history of prior delinquency or criminal activity.

The State asserts initially that defendant has waived the issue by failing to object at the sentencing hearing and to raise the error in a written posttrial motion. Waiver, however, limits the parties' ability to raise an argument, not this court's right to entertain an argument *People v. Colin*, 344 Ill. App. 3d 119, 129 n.4, 799 N.E.2d 451 (2003) (*Colin*). Defendant's argument will be addressed.

It is impermissible for the circuit court to impose a more severe sentence on the ground that defendant caused the victim serious bodily harm, namely, death, because death is inherent in the offense. *Saldivar*, 113 Ill. 2d at 271-72. A court may consider in aggravation the fact that "defendant's conduct caused or threatened serious harm." 730 ILCS 5/5—5—3.2(a)(1) (West 2000). Where a court applies this aggravating factor, it may consider the force employed and the physical

---

the jury venire about gang bias, erred in refusing to ask two additional questions submitted by defense counsel regarding gang bias." *People v. Furdge*, 332 Ill. App. 3d 1019, 1026, 774 N.E.2d 415 (2002).

manner in which the victim's death was brought about, which comprehends the degree or gravity of defendant's conduct rather than the end result, that is, the victim's demise. *Saldivar*, 113 Ill. 2d at 271-72; *People v. Johnson*, 206 Ill. App. 3d 542, 547-48, 564 N.E.2d 913 (1990). It is unrealistic to suggest that the court, in sentencing defendant, must avoid mentioning that someone has died or risk committing reversible error; however, where the court expressly states that it was considering the death of the victim, the court errs. *People v. McClellan*, 232 Ill. App. 3d 990, 1011, 600 N.E.2d 407 (1992).

Where mitigating evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication to the contrary, other than the sentence itself. *People v. Allen*, 344 Ill. App. 3d 949, 959, 801 N.E.2d 1115 (2003). An appellate court will not substitute its judgment for that of a circuit court merely because it would have balanced the appropriate factors differently if it had been charged with the initial task of sentencing. *Allen*, 344 Ill. App. 3d at 959.

In this case, based upon a thorough review of the totality of the circuit court's comments at the sentencing hearing, the court's reference to Cook's death was an acknowledgment that a serious offense had taken place. The reference by the court does not reflect that it considered the murder as an aggravating factor; rather, the court merely was noting that "defendant's conduct caused *** serious harm." 730 ILCS 5/5—5—3.2(a)(1) (West 2000). The court did not violate the principle that a factor inherent in an offense should not be considered as a statutory aggravating factor. *People v. McPherson*, 136 Ill. App. 3d 313, 317, 483 N.E.2d 592 (1985).

Nor did the circuit court neglect to consider factors in mitigation. The defense presented a considerable amount of evidence in mitigation. Defendant's biological father, Michael Desmond, testified that he knew defendant was trying to leave the gang and told the circuit court that "defendant is an excellent father" and "not an evil person" and that he "can be rehabilitated." The court was also presented with a letter from Reverend Garland Singleton, a director for the Moody Bible Institute, wherein the reverend commented on defendant's favorable progress since his incarceration. Defense counsel pointed out that defendant has a verbal IQ of 63 and a working memory score of 55, indicating that he is functioning at a retarded level. Counsel argued defendant's actions were not in "cold blood," but the result of him trying to leave the gang.

The circuit court stated to defendant that it "has considered factors in aggravation and mitigation, the facts of this case as well as your pre-sentence investigation, the testimony of your father along

with a letter from Reverend Garland Singleton. You have made—indicated since your arrest that you can conform to the rules and regulations not only in Cook County jail but you're a student of the [S]criptures. You're on your own attending Bible studies each week. And as Reverend Singleton puts it, you are now a person of changed heart and hopefully you have a changed life."

Defendant has failed to overcome the presumption that the circuit court considered all evidence in mitigation, especially where the court stated that it considered factors in aggravation and mitigation. No basis exists upon which to disturb the sentence imposed.

## III

■ Defendant's next sentencing claim is that the circuit court abused its discretion in imposing a 40-year sentence, twice that of the minimum. He believes it is excessive in light of his "background, youth, limited mental capacity, and his potential for rehabilitation." Defendant believes his mental deficiencies reduce his culpability, citing *Atkins v. Virgina*, 536 U.S. 304, 319, 153 L. Ed. 2d 335, 349, 122 S. Ct. 2242, 2251 (2002) (*Atkins*). There, the Supreme Court stated that "[t]here is no evidence that [the mentally retarded] are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan ***. Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability." *Atkins*, 536 U.S. at 318, 153 L. Ed. 2d at 348, 122 S. Ct. at 2250-51. Defendant acknowledges that unlike the present case, *Atkins* involved the excessiveness of applying the death penalty to the mentally retarded and did not involve a term of imprisonment.

The State responds initially that this issue has been waived for failure to object at sentencing or in a posttrial motion. Again, waiver is a limitation only on the parties' ability to raise an argument (*Colin*, 344 Ill. App. 3d at 129 n.4), and this issue will be addressed.

The weight to be accorded each factor in aggravation and mitigation, and the resulting balance to be struck among them, depends upon the circumstances of the case. *People v. Vazquez*, 315 Ill. App. 3d 1131, 1134, 734 N.E.2d 1023 (2000). In fashioning appropriate sentences, the circuit court is in a far better position than a reviewing court because it can make a reasoned judgment based on firsthand consideration of factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Hall*, 273 Ill. App. 3d 838, 843, 652 N.E.2d 1266 (1995). A sentence will not be disturbed on review unless it greatly diverges from the purpose and spirit of the law or is highly disproportionate to

the nature of the offense. Accordingly, the standard of review is whether the circuit court abused its discretion. *Hall*, 273 Ill. App. 3d at 843.

Here, defendant was sentenced to 40 years for his conviction of first degree murder. The statutory range for the offense is a "term not less than 20 years and not more than 60 years." 730 ILCS 5/5—8—1(a)(1)(a) (West 2000). Where a sentence falls within the statutorily mandated guidelines, it is presumed to be proper and will be overturned only where there is an affirmative showing that the sentence departs significantly from the intent behind the law or is manifestly violative of constitutional guidelines. *People v. Boclair*, 225 Ill. App. 3d 331, 335, 587 N.E.2d 1221 (1992). This court will not substitute its judgment for that of the circuit court merely because it may have balanced the appropriate factors differently. *Allen*, 344 Ill. App. 3d at 959. The circuit court did not abuse its discretion in sentencing defendant.

## IV

Defendant last assigns error to the circuit court for failing to admonish him properly pursuant to Supreme Court Rule 605(a) (188 Ill. 2d R. 605(a)). Defendant complains that inadequate admonishments caused him to waive sentencing issues on review. Since these issues have been addressed in Parts II and III of this opinion, this issue has been rendered moot.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINN, P.J., and GREIMAN, J., concur.