2016 IL App (1st) 133389

FIFTH DIVISION
May 27, 2016

No. 1-13-3389

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 97 CR 1833 |
| | ) | |
| GIOVANNI SPILLER, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Gordon and Lampkin concurred in the judgment and opinion.


**OPINION**

¶ 1     The undisputed evidence in this case showed that on November 29, 1996, defendant,

Giovanni Spiller, shot and killed Roberto Castillo on West Montrose Avenue, in Chicago,

Illinois. Immediately after the shooting, defendant fled the jurisdiction for several weeks. Prior to

turning himself in to the police, defendant consulted with a criminal defense attorney, who gave

defendant his opinion that defendant had a winning case. The state charged defendant by

indictment with two counts of first degree murder. Defendant posted bond ($200,000), with a

condition of 24-hour electronic monitoring/home confinement. He cut off the monitoring bracelet and again fled the jurisdiction. He was captured in California 15 years later on March 13, 2012. Following a bench trial, Judge James Obbish found defendant guilty of first degree murder and sentenced him to 35 years in the Illinois Department of Corrections (IDOC).

¶ 2    Defendant alleges on appeal that the State failed to disprove his affirmative defense that he acted in self-defense and that he received ineffective assistance of counsel because his attorney did not assert to the judge that he was guilty of the lesser mitigated offense of second degree murder. For the following reasons, the trial court's judgment and sentence are affirmed.

¶ 3                                  I. BACKGROUND

¶ 4    On November 29, 1996, an eyewitness to the shooting, Leona Minassian, was sitting in her parked vehicle outside her family's pool hall, Marie's Golden Cue, on West Montrose Avenue, in Chicago, Illinois. The victim, Roberto Castillo, knocked on her car and waved to her on his way into the pool hall. She knew the victim as a regular customer at the pool hall. The pool hall had plate glass windows across the front, which allowed a view from the front of the hall, all the way to the back. After he went inside, the victim spoke to the man working at the counter and some of his friends. Less than a minute later, the victim ran out of the pool hall, with defendant chasing him. Minassian knew defendant since she was a child. Like the victim, he was also a regular patron at the pool hall.

¶ 5    As the victim ran toward her, she heard two gunshots and "it looked like [the victim] would have tripped, but as he fell, [the victim] turned around and ended up like facing the windows." Defendant then fired an additional three shots, one shot for each step he took in the direction of the victim. Minassian testified at trial that the shooting occurred directly in front of her parked car, where she was sitting. She estimated that the length of the car hood was the

distance between her and the victim, about 4½ feet, when he was shot. She observed that defendant used a chrome .45-caliber gun, during the shooting. She was sure of the caliber of the gun because she had just completed a ballistics class. Minassian did not observe any weapons in the victim's hands either before he went into the pool hall or after he came out. Minassian called the police and an ambulance as defendant drove away in a dark green SUV. She provided the operator with the license plate number of defendant's vehicle. A few weeks later, Minassian identified defendant in a police lineup.

¶ 6        Attorney Robert Christie testified that he was playing pool at Marie's Golden Cue at the time of the shooting. Shortly after 6 p.m. he heard a gunshot. He looked out the window and observed a man leaning forward with something shiny in his hand, with his arm out at a 45-degree angle pointed towards the ground. Christie then heard three more gunshots in succession. Christie believed that the shiny object in the man's hand was a gun. Every time he observed the man's hand jerk, he heard a simultaneous shot. He observed the shooter turn around and run eastward.

¶ 7        Chicago police investigator Gurtowski recovered three .45-caliber fired cartridge cases: from the sidewalk, one on top of the curb, and one from the street, near the curb. Medical personnel at Illinois Masonic Hospital gave Chicago police officer[1] Valenzano one fired bullet that was recovered from the victim's body.

¶ 8        It was stipulated by the parties that Deputy Cook County Medical Examiner Dr. Larry Sims would testify that he conducted an autopsy on the victim on November 30, 1996. The stipulated testimony was as follows: the victim suffered from five gunshot wounds: (1) a through-and-through gunshot wound which entered the right lower back and exited the left lower

---

[1]The Chicago police witnesses' first names are unknown.

back; (2) a gunshot wound to the left posterolateral thigh that partially exited at the top of the victim's left buttocks; (3) a gunshot wound of entrance to the victim's left lower chest; (4) a through-and-through gunshot wound which entered the victim's left upper abdomen and exited through the right lower back; and (5) a graze wound to the victim's left inner forearm. One bullet was recovered from the partial exit wound located at the top of the victim's left buttocks and another bullet associated with the wound to the victim's left lower chest was recovered in the right flank. All tests for ethanol, opiates and cocaine were negative. The coroner listed the cause of death as multiple gunshot wounds and the manner of death as a homicide.

¶ 9        Firearms identification expert John Sanchez examined the two fired bullets recovered during the autopsy and at the hospital, as well as the fired cartridge cases recovered from the scene of the shooting. The parties stipulated that Sanchez would testify that the three recovered bullets, as well as the three fired cartridge cases, were .45-caliber and all three of the cartridge cases were fired from the same gun.

¶ 10        Defendant testified that the victim had previously physically harmed him and had previously threatened him. He never called the police after these incidents. On the day of the shooting, the victim entered the pool hall and called defendant a slang Filipino word which meant "you are stupid." Defendant tried to avoid the victim and only left the pool hall when he believed that the victim had left the area. When defendant exited the pool hall, he observed the victim step out of a doorway further down the street. The victim struggled to remove a gun from his waistband. As he was struggling with the gun, the victim told defendant that he was going to kill him. Defendant reached for his gun and shot the victim numerous times.

¶ 11    Defendant claimed that after the victim fell to the ground, the victim's friend, Boxer,[2] picked up something and left. Defendant did not know what Boxer picked up. No weapon of any kind was recovered from the victim's person or from the surrounding area. Defendant ran to his SUV and drove off. He dismantled the gun he had used to shoot the victim and threw it away. Defendant admitted that he bought a .45-caliber gun in the street three or four years prior to this incident. He carried this gun for protection while in the bookmaking business, but he never had a license for it.

¶ 12    After defendant consulted with a criminal defense attorney, he turned himself in to the police several weeks after the shooting. Defendant was placed on electronic home monitoring, but he cut off his electronic monitoring bracelet and fled the jurisdiction. Defendant testified that he did this because he believed people were after him and might kill him.

¶ 13    The defense expert, Dr. Nancy Jones, a forensic pathologist, testified that the victim had to be "in at least separate positions" at the time the five gunshot wounds were inflicted because the wounds were located in three distinctly separate areas of the body. The victim sustained two gunshot wounds in the front of his body, consistent with the victim being in a vertical position or slightly leaning forward. Jones testified that the wounds were not consistent with the victim being shot while lying on the ground while the shooter stood over him. She stated that the gunshot wound to the back of his left thigh could only have occurred if the victim's back was to the weapon as it was being fired.

¶ 14    The trial court found defendant guilty of first degree murder and specifically found that the State proved beyond a reasonable doubt that defendant was not acting in self-defense when

---

[2]Full name unknown.

he shot the unarmed victim after chasing him from the pool hall. The trial court sentenced defendant to 35 years in the IDOC. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16          A. EVIDENCE SUFFICIENTLY PROVED DEFENDANT GUILTY OF
              FIRST DEGREE MURDER BEYOND A REASONABLE DOUBT
              AND SUFFICIENTLY DISPROVED HIS AFFIRMATIVE DEFENSE
              OF SELF-DEFENSE

¶ 17          Defendant admits to repeatedly shooting the victim. The issue raised by the defendant is whether the State disproved whether he, reasonably or unreasonably, acted in self-defense.

¶ 18          In a challenge to the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.* at 225. "[T]he State carries the burden of proving beyond a reasonable doubt each element of an offense." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979)).

¶ 19          Initially, we answer the question of whether the State sufficiently proved the charge of first degree murder. To prevail on a charge of first degree murder, the State must prove beyond a reasonable doubt: (1) that defendant performed the acts which caused the death of the victim; and (2) that when defendant did so, he intended to kill or do great bodily harm to the victim or he knew that his acts would cause death to the victim. See 720 ILCS 5/9-1(a)(1), (a)(2) (West 2004); Illinois Pattern Jury Instructions, Criminal, Nos. 7.01, 7.02 (4th ed. 2000).

¶ 20    In the present case, two eyewitnesses testified that defendant shot the unarmed victim repeatedly. Minassian testified that she knew both defendant and the victim. She was less than 4½ feet away when defendant chased the victim out of the pool hall, and repeatedly shot the victim as the victim attempted to run away. He continued firing at the victim even after he fell to the ground. Christie viewed the same events from inside the pool hall. He testified that he heard several gunshots and observed a man's arm pointed toward the ground at a 45-degree angle holding something shiny in his hand, which he believed was a gun. He observed the man's arm jerk several times. At the same time as he viewed the arm motions, he heard gunshots. The testimony of the coroner and the firearms expert corroborated the eyewitness testimony. The coroner recovered two bullets from the victim's body, one from the right flank and one from the rear buttocks area. In addition to those gunshot wounds, there were two through-and-through wounds and one bullet recovered by Illinois Masonic Hospital personnel. Three spent cartridges were recovered from the scene.

¶ 21    Clearly, there was a sufficient basis to find defendant guilty of murder. However, when a murder defendant asserts self-defense, "the State must prove *more* than the three elements of first degree murder. The State must also prove that the murder was not carried out in self-defense, and that the defendant's use of force was not legally justified." (Emphasis in original.) *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995). Section 7-1 of the Criminal Code of 1961 provides in relevant part:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause

death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1 (West 1996).

¶ 22    Defendant asserts that the State failed to disprove his affirmative defense of self-defense. "Once an affirmative defense is raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." *Jeffries*, 164 Ill. 2d at 127. In order to raise the defense of self-defense, the defendant must establish some evidence of each of the following elements:

"(1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *Id.* at 127-28 (citing *People v. Anderson*, 234 Ill. App. 3d 899, 906 (1992)).

See also *People v. Willis*, 217 Ill. App. 3d 909, 917 (1991).

¶ 23    Defendant argues that Minassian's testimony was so filled with inconsistencies that it should have been disregarded. If her testimony is disregarded, then defendant contends that the State failed to disprove that defendant acted in self-defense. We find this argument unpersuasive.

¶ 24    The trial court correctly found that Minassian's account of the shooting was, in almost all respects, consistent and credible. The points, which defendant asserts render Minassian's entire account unreliable, are minor and do not call into question her ability to recall the events as they occurred over 15 years prior. Defendant points to Minassian's testimony that the victim

exchanged pleasantries with her before entering the pool hall as opposed to an officer's account that she stated that they did not have a conversation, but this discrepancy is minor.

¶ 25    Likewise, defendant points out that Minassian previously stated that the victim never entered the pool hall, but, rather, that he turned and started running with defendant in pursuit. At trial, she testified that the victim entered the pool hall and spoke to people inside before running out. Defendant also testified that the victim actually came into the pool hall, rather than just came to the front door. Neither of these differences would cause a reasonable person to disregard her entire testimony. The applicable standard of review fully recognizes that it is the trier of fact's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). The trial court found both of these inconsistencies minor, and we will not disturb that determination. *Id.*

¶ 26    The only evidence presented which supported defendant's self-defense claim was defendant's own testimony. Defendant claimed that the victim threatened him two months prior to the shooting. Defendant testified that the victim demanded that defendant give the victim a "cut of the profits" from defendant's illegal bookmaking business. Defendant refused and the victim told him that if he did not give him the money, the victim would kill defendant. The victim then punched defendant in the eye and kicked him repeatedly, which required defendant to seek medical attention at a hospital. According to defendant, on the night of the shooting, the victim came into the pool hall and started calling defendant "names." The victim then stared at defendant for three to five minutes before the victim left the pool hall. As defendant left the pool hall, the defendant claimed that the victim called to him. As defendant turned, he observed the

victim reaching for a gun in his waistband, but he was unable to pull the gun out. Defendant drew his own gun and fired four times.

¶ 27        Defendant's version was completely contradicted by Minassian's testimony, which the trial court found credible. She never observed the victim with a gun. As the trial court found, if the victim had a gun, he would not have been running away. Defendant maintained that he observed the victim pulling out a gun, but the victim did not already have a gun in his hand. Additionally, Minassian corroborated the type of gun defendant possessed and used to shoot the victim, *i.e.*, a .45-caliber. The trial court also found defendant's claim that the victim's friend, Boxer, reached down and picked up a gun left by the victim unbelievable, considering that defendant was standing near the victim's body, having just shot the victim five times. The trial judge did not find defendant's testimony credible that he acted in self-defense. Neither do we. As our courts have previously held, " '[w]hether a killing is justified under the law of self-defense is a question of fact [citations], and the fact finder is not required to accept as true the defendant's evidence in support of that defense [citations]. Instead, the trier of fact is obliged to consider the probability or improbability of the evidence, the circumstances surrounding the event, and all of the witnesses' testimony.' [Citations.]" *People v. Garcia*, 407 Ill. App. 3d 195, 203-04 (2011) (quoting *People v. Huddleston*, 243 Ill. App. 3d 1012, 1018-19 (1993)).

¶ 28        This court, as the reviewing court, will not retry a defendant. We determine whether the evidence was sufficient to find defendant guilty of first degree murder beyond a reasonable doubt. *People v. Austin M.*, 2012 IL 111194, ¶ 107. Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are the responsibilities of the trier of fact, not the reviewing court. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). After considering all of the evidence presented at defendant's trial and viewing that

evidence in the light most favorable to the State, we find that the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty of the first degree murder of Ricardo Castillo. *Jackson*, 232 Ill. 2d at 280.

¶ 29 We now turn to the issue of whether the trial court should have found defendant guilty of second degree murder instead of first degree murder.

"If the State negates *any one* of the self-defense elements, the defendant's claim of self-defense must fail. The trier of fact must then find the defendant guilty of either first or second degree murder. Therefore, the defendant's *unreasonable* belief is not necessarily an element the State must disprove in defeating a claim of self-defense. Rather, it is only one of the six enumerated factors which the State may choose to attack to rebut a claim of self-defense. Indeed, the State could also defeat a self-defense claim by proving the absence of any threat of force against the defendant, that the defendant was the aggressor, the absence of a danger of imminent harm, or a lack of unlawful force." (Emphases in original.) *Jeffries*, 164 Ill. 2d at 128.

¶ 30 As set forth in *Jeffries*, 164 Ill. 2d at 128, "[w]here evidence of both first and second degree murder is presented and the defendant advances a claim of self-defense, the statute expressly states that the *State* bears the burden of proving beyond a reasonable doubt not only the elements of first degree murder, but also that the defendant was not justified in using the force that he used." (Emphasis in original.) If a defendant is convicted of second degree murder, it indicates that the trier of fact has essentially concluded that:

"the evidence that the defendant has offered was not sufficient to support his claim of self-defense. The defendant, however, has proven by a

- 11 -

preponderance of the evidence the existence of a mitigating factor sufficient to reduce the offense of murder to second degree murder. The defendant is not compelled to show that he had an unreasonable belief in the necessity for the use of force to obtain a second degree murder conviction. Rather, after the defendant has presented the best evidence for his defense, the trier of fact has concluded that the evidence only supports a finding of second degree murder and not absolute justification for the defendant's actions." *Id.* at 129.

¶ 31 In the present case, the trial court found that there was no belief, reasonable or unreasonable, that defendant was acting in self-defense. There was no credible evidence that defendant was threatened by the victim or that the victim had a weapon. The evidence established that defendant chased the victim, shot him as he attempted to run away, and continued to shoot him after he fell to the ground.

¶ 32 Here, taking the evidence in the light most favorable to the State as we must, we conclude that a reasonable finder of fact would find defendant guilty of first degree murder. In sum, this case presented a credibility contest between defendant and Minassian, Christie, the coroner and the firearms examiner. We do not find the court's weighing of credibility to be so unreasonable, improbable, or unsatisfactory that a reasonable doubt of defendant's guilt remains. *Collins*, 214 Ill. 2d at 217.

¶ 33     B. TRIAL COUNSEL WAS NOT INEFFECTIVE FOR EMPLOYING
         TRIAL STRATEGY

¶ 34 Defendant contends that his counsel was ineffective for arguing to the trial judge in the bench trial "there is no compromise. There is no second degree in this case." Defendant contends that this defense was based on a misapprehension of the law.

¶ 35        Defendant correctly states that second degree murder is properly characterized as a lesser mitigated offense rather than a lesser-included offense of first degree murder. *Jeffries*, 164 Ill. 2d at 122. The trial court may also convict a defendant of second degree murder *sua sponte*. *People v. Rogers*, 286 Ill. App. 3d 825, 829-30 (1997) (upholding the trial court's *sua sponte* finding that the defendant was guilty of the uncharged lesser mitigated offense of second degree murder even though the defendant, at trial, denied any involvement in the shooting). Here, defendant waived his right to a jury. In a bench trial, the judge determines from the evidence whether the defendant is guilty of murder or of some lesser-included offense. *People v. Turner*, 337 Ill. App. 3d 80, 90 (2003).

¶ 36        To establish a claim of ineffective assistance of counsel, a defendant must satisfy the familiar *Strickland* test. See *Strickland v. Washington*, 466 U.S. 668 (1984). The test is composed of two prongs: deficiency and prejudice. *Id.* at 687; *People v. Brisbon*, 164 Ill. 2d 236, 245-46 (1995). First, the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999); *People v. Hampton*, 149 Ill. 2d 71, 108-09 (1992).

¶ 37        Second, the defendant must establish prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The prejudice prong of *Strickland* entails more than an "outcome-

determinative" test. The defendant must show that counsel's deficient performance rendered the result of the proceeding unreliable or fundamentally unfair. *Evans*, 186 Ill. 2d at 93; *People v. Mahaffey*, 165 Ill. 2d 445, 458 (1995). A defendant must satisfy both prongs of the *Strickland* test. Therefore, "failure to establish either proposition will be fatal to the claim." *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996); accord *People v. Guest*, 166 Ill. 2d 381, 390 (1995).

¶ 38            Defendant cannot prevail under the first prong. Counsel's decision to pursue the all or nothing defense of self-defense is a valid trial strategy. Although defendant contends that the case of *People v. Walton*, 378 Ill. App. 3d 580 (2007), was "poorly reasoned" and factually distinguishable, *Walton* directly addresses and controls the outcome of defendant's argument. The defendant in *Walton* argued that a criminal defendant in a bench trial for murder had the exclusive right to determine whether to pursue the lesser offense of second degree murder and that a trial court must inquire whether defendant agrees with his counsel's "all-or-nothing" defense. *Id.* at 587-88. The court found that the defendant's argument overlooked

> "an important distinction between jury trials and bench trials as well as the rationale for the aforementioned rule. In a jury trial, unless a lesser-included-offense instruction is tendered, the jury does not have the option to convict the defendant of an uncharged lesser-included offense; rather, the jury will be forced to decide either to convict or acquit him. This avoids the possibility of a compromise verdict where the 'jury may be induced to find defendant guilty of the lesser offense rather than to continue the debate as to his innocence.' *People v. Benford*, 349 Ill. App. 3d 721, 728 (2004). In contrast, a judge presiding over a bench trial may convict a criminal defendant of an uncharged lesser-included offense *sua sponte*." *Walton*, 378 Ill. App. 3d at 588.

¶ 39      The *Walton* court held that the defendant's counsel did not "usurp" the defendant's fundamental rights or render ineffective assistance and the trial court did not violate due process in failing to inquire into counsel's trial strategy. *Id.* Instead, the court held that the defendant's argument essentially challenged counsel's trial strategy, which is " 'virtually unchallengeable' and will generally not support an ineffective assistance of counsel claim." *Id.* at 589 (citing *People v. Palmer*, 162 Ill. 2d 465, 476 (1994)). "Counsel's decision to advance an 'all-or-nothing defense' has been recognized as a valid trial strategy [citations] and is generally not unreasonable unless that strategy is based upon counsel's misapprehension of the law." *Id.* The court found that defense counsel "adopted a valid trial strategy when he argued that defendant was acting in self-defense. The mere fact that this strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance." *Id.*

¶ 40      Based on *Walton*, we similarly conclude in this case that counsel did not render ineffective assistance in making the strategic choice to pursue an "all-or-nothing" defense. The record does not support defendant's contention that counsel misapprehended the law. Rather, counsel's statements ("there is no compromise. There is no second degree in this case.") indicate that he considered, but rejected, such a dual strategy. Moreover, counsel cannot be found ineffective for failing to request that the trial court consider second degree murder, as the trial court was empowered to consider this lesser offense regardless of counsel's arguments.

¶ 41      Further, we also conclude that defendant suffered no prejudice. It is clear from the record that the trial court did, in fact, consider and reject any contention that defendant had a reasonable or unreasonable belief in self-defense. There is no reasonable probability that, had counsel argued in favor of a second degree murder conviction, the trial result would have differed.

Accordingly, because counsel did not act unreasonably and defendant suffered no prejudice, his ineffective assistance of counsel claim has no merit.

¶ 42                                  III. CONCLUSION

¶ 43         We affirm the circuit court in finding defendant guilty of murder and the sentence of 35 years in the Illinois Department of Corrections.

¶ 44         Affirmed.