FIFTH DIVISION
October 31, 2008

No. 1-06-1482

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| vs. | ) | No. 04 CR 30237 |
| | ) | |
| IVAN MARTINEZ, | ) | The Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE TOOMIN delivered the opinion of the court:

Defendant, Ivan Martinez, was convicted of aggravated unlawful use of a weapon and unlawful use of a weapon by a felon after a jury trial and was sentenced as a Class X offender to concurrent terms of imprisonment of 12 years in the Illinois Department of Corrections. On appeal, he asserts that: (1) the trial court conducted incomplete and insufficient *voir dire* by failing to adhere to the requirements of Supreme Court Rule 431 (177 Ill. 2d R. 431); (2) prosecutors presented improper and inflammatory arguments; (3) entry of judgment on both counts of the charged offenses violated the one-act, one-crime rule; (4) the Violent Crime Victim Assistance fine was improperly imposed; and (5) the Criminal/Traffic Conviction Surcharge fine should be offset by defendant's time in custody. For the following reasons, we affirm in part, vacate in part and modify the judgment of the circuit court.

BACKGROUND

The instant prosecution stemmed from the discovery of a loaded handgun in defendant's van following a traffic stop in the City of Chicago on December 3, 2004. Defendant filed a motion to quash arrest and suppress evidence, which the court denied after an evidentiary hearing. The matter then proceeded to trial on two counts, aggravated unlawful use of a weapon in that defendant knowingly carried an uncased, loaded and immediately accessible firearm in a vehicle after having been previously convicted of attempt second degree murder, and unlawful use of a weapon by a felon.

The evidence presented before the jury established that on December 3, 2004, Detective Healey was on duty at Area Five headquarters located on the northwest side of the city. He left the facility in an unmarked car around 3:30 a.m. to get coffee. As the detective drove north on Laramie, he noticed a van parked in the alley between Fullerton and Medill. The van was in the middle of the alley with the headlights off, the driver's door open, with nobody in or around it. After circling the block to investigate further, Healey saw the van traveling west in the alley and then turn north onto Laramie. He followed the van, observing that it had no license plate on the bumper, but did exhibit some form of temporary registration in the rear window, which was tinted black. Because he was alone, Healey radioed for assistance in stopping the vehicle. Upon arrival of the assist officers, Bieze and Dortch, both units activated their emergency lights and stopped the van at Cicero and Wabansia.

Healey approached the driver's side of the van, where he observed defendant seated in the driver's seat. He asked defendant for his driver's license and insurance, but defendant was

unable to produce either.  In turn, Healey asked the defendant to step out of the vehicle, and as defendant complied, the detective observed that he was dressed in camouflage clothing and was wearing a black skullcap with eye holes cut into it.  As the door of the van remained open, Healey saw what he recognized as the handle of a gun protruding from beneath the front seat. Healey recovered the gun, a .38-caliber Taurus revolver containing live and spent rounds. Defendant was arrested upon discovery of the weapon.  Healey later inventoried the weapon and it was admitted into evidence at defendant's trial.

Detective Healey gave defendant his *Miranda* rights at the scene and the station and defendant acknowledged his understanding.  When asked why he had a gun and was dressed in camouflage, defendant replied that he was from Miami and that he was on a mission.  Healey inventoried the black skullcap, but did not inventory the camouflage clothing or boots.  Although defendant's booking photograph depicts him in a polo shirt, Healey testified that defendant was wearing it beneath the camouflage shirt or jacket.

Officer Daniel Bieze testified that he and his partner assisted Healey in making the traffic stop.  Defendant was the only occupant of the vehicle.  When defendant was unable to produce a driver's license or proof of insurance he was placed into custody and put in the backseat of the assist vehicle.  Officer Bieze confirmed that defendant was wearing "like a camouflage outfit, like an army jacket like shirt, camouflage pants, military jump boots like black, he had camouflage gloves and a black knit cap."  Bieze noted that the jacket was removed during a custodial search before defendant was taken to the lockup.  The officer did not see a gun in the van nor did he participate in the inventory of evidence.

The gun and ammunition recovered from defendant's van was sent to the Illinois State Police Forensic Science Center for fingerprint analysis. Julie Wessel, a forensic scientist, examined the revolver, as well as the spent and live cartridges, but found no latent fingerprint impression suitable for comparison.

The parties also stipulated that defendant had been convicted of a felony offense in the state of Florida. However, the specific offense was not identified. After the People rested, defendant moved for a directed verdict, which the court denied. The defense then rested. After arguments, the jury returned verdicts of guilty on each count. Following denial of post-trial motions, defendant was sentenced to concurrent sentences of 12 years of imprisonment. The court also entered an order assessing fines, fees and costs against defendant totaling $639, including a $4 criminal traffic conviction surcharge, a $20 violent crime victim assistance charge, and a $100 trauma fund charge. Defendant filed a motion to reconsider sentence, which the court denied, and this appeal followed.

## ANALYSIS

### Sufficiency of the *Voir Dire*

In his initial assignment of error, defendant asserts that the trial court committed reversible error by failing to *sua sponte* inquire into the potential bias prospective jurors might harbor against a defendant who declines to testify or present evidence in his own behalf.

Jury selection was conducted by the court and counsel on February 8, 2006. Initially, the trial court informed the *venire* that:

"The defendant is presumed innocent of the charges" and that "the State has the

burden of proving the defendant guilty beyond a reasonable doubt."

The court then called 14 prospective jurors into the jury box and made a general inquiry to the group:

> "Again the defendant is presumed innocent of the charges. State has the burden of proving him guilty beyond a reasonable doubt. Is there anybody who has any problems with that proposition of law? No response."

The judge next directed specific inquiries to each member of the group dealing with family background, residency, employment, prior jury service, and involvement in criminal and civil proceedings. Additionally, several jurors who had acquaintances in law enforcement were asked if they could judge the testimony of a police officer in the same manner as that of any other witness. The parties were then permitted to supplement the *voir dire*; the State directed one question to the group, but defense counsel had no questions. Both sides then exercised their peremptory challenges, resulting in the tentative acceptance of 10 jurors.

Following the lunch break, 14 additional jurors were placed in the jury box, and after informing the new group of the State's burden to prove defendant guilty beyond a reasonable doubt, the court further stated:

> "As I stated earlier, I will repeat it, the State has the burden of proving the defendant guilty beyond a reasonable doubt. And that burden remaining with them throughout the trial.
>
> The defendant is not required to prove his innocence. Is there anybody seated in the jury box that has any qualms or disagrees with that proposition of

1-06-1482

law? No response."

Defendant maintains that the nature and scope of the court-conducted *voir dire* deprived him of his right to a fair trial because it failed to adequately question each potential juror as required by Supreme Court Rule 431(b). According to defendant, the court's inquiries were deficient in failing to question each of the prospective jurors regarding his or her understanding of and ability to follow the principles that the defendant is presumed innocent, that he does not have to present any evidence, and that his failure to testify cannot be held against him. Defendant further asserts that because the recent amendment to Rule 431 applies retroactively to the case at bar, he is therefore entitled to a new trial. Because this issue involves the construction of a supreme court rule, we review the claim *de novo*. *Robidoux v. Oliphant* 201 Ill. 2d 324, 332, 775 N.E.2d 987, 992 (2002).

As noted, defendant's trial took place in February 2006. At that time, Rule 431 provided:

"(a) The court shall conduct *voir dire* explanation of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of

6

jurors.

(b) If requested by the defendant, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." 177 Ill. 2d R. 431.

Precedent instructs that the requirements set forth in Rule 431 (b) have come to be known as the *Zehr* principles. See *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). In *Zehr*, our supreme court held that the trial court erred during *voir dire* by refusing defense counsel's request to question prospective jurors about the State's burden of proof, the presumption of innocence, and the defendant's right to not offer any evidence on his own behalf. *Zehr*, 103 Ill. 2d at 477-478, 469 N.E.2d at 1064.

The *Zehr* court reasoned:

"We are of the opinion that essential to the qualifications of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not

7

required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

*Zehr*'s salutary principles were codified by the supreme court in its May 1997 amendment to Rule 431 (177 Ill. 2d R. 431). See *People v. Gregg*, 315 Ill. App. 3d 59, 66-67, 732 N.E.2d 1152, 1158 (2000) (discussing evolution of Rule 431). At that time subsection (b) was added and expressly provided that the trial court need only question prospective jurors in accordance with *Zehr*, "*if requested by the defendant.*" (Emphasis added.) 177 Ill. 2d R. 431(b). Additionally, new subsection (b) also cautioned that "*no inquiry shall be made into the defendant's failure to testify when the defendant objects.*" (Emphasis added.) 177 Ill. 2d R. 431(b). Thus, where requested by the defendant, a trial judge's refusal to inquire into the bias of prospective jurors toward a defendant who declines to testify on his own behalf constitutes reversible error. *People v. Pogue*, 312 Ill. App. 3d 719, 726, 724 N.E.2d 525, 530-31 (1999).

In the instant case, the record conclusively establishes that defense counsel made no request that *Zehr*'s principles be articulated in the court's *voir dire*. Hence, the People argue that absent such request, the trial court conducted *voir dire* in full compliance with the applicable supreme court rules. The State's position finds support in *People v. Williams*, 368 Ill. App. 3d 616, 623, 858 N.E.2d 606, 613 (2006), where we determined that the plain language of Rule 431(b) defeated defendant's argument that the trial court had a *sua sponte* duty to make *Zehr* inquiries, absent a request by defense counsel. Earlier, an identical result obtained in *People v. Benford*, 349 Ill. App. 3d 721, 812 N.E.2d 714 (2004), where we reasoned that the defendant's

8

decision to ask jurors individually as to whether they understand and accept *Zehr*'s principles is not mandatory, but optional. *Benford*, 349 Ill. App. 3d at 733, 812 N.E.2d at 724. In *Benford*, we further observed, that "Although counsel failed to have the circuit court inform the jurors regarding defendant's decision not to testify, the jury was made aware of the principle just prior to deliberating, thereby curing any error." *Benford*, 349 Ill. App. 3d at 733, 812 N.E.2d at 733. That likewise occurred in the proceedings below.

We are aware that a contrary result was reached in *People v. Pearson*, 356 Ill. App. 3d 390, 826 N.E.2d 1099 (2005). In *Pearson*, while our Second Division agreed that Rule 431(b) did not vest trial judges with the responsibility of making *Zehr* inquiries, it nonetheless found that the trial judges' failure to do so *sua sponte* violated the mandate of Rule 431(a) that the court "*shall acquaint prospective jurors with the general duties and responsibilities of jurors.*" (Emphasis added.) 177 Ill. 2d R. 431(a). The *Pearson* court reasoned that "Rule 431(a) requires trial judges to inform prospective jurors about a defendant's basic rights, as set out in Rule 431(b), so that they will be informed about their 'general duties and responsibilities.' " *Pearson*, 356 Ill. App. 3d at 400, 826 N.E.2d at 1107-08.

Two First District cases that followed in the wake of *Pearson* questioned the rationale of that holding and rejected the result. In *People v. Foreman*, 361 Ill. App. 3d 136, 836 N.E.2d 750 (2005), our First Division reasoned that the *Pearson* court's construction of subsection (a) would render subsection (b) of the rule superfluous. *Foreman,* 361 Ill. App. 3d at 146, 836 N.E.2d at 760.

"We cannot agree with the *Pearson* court that the supreme court would, in subsection

9

(b), leave it to defense counsel to decide whether the trial court should inquire into the jurors' understanding of the *Zehr* principles but would, in subsection (a), make the trial court's failure to inform the jurors of those principles reversible error, even absent a request by defense counsel." *Foreman*, 361 Ill. App. 3d at 146, 836, N.E.2d at 760.

Similarly in *Williams* our Fourth Division agreed that Rule 431(a) does not require the trial court to ask potential jurors about the *Zehr* principles in the absence of a request by defense counsel. *Williams*, 368 Ill. App. 3d at 625, 858 N.E.2d at 614.

We believe that *Foreman* and *Williams* represent the better reasoned approach. We concur in the underlying rationale in *Foreman*, that the supreme court's refusal to make the requirements of subsection (b) mandatory indicates that the court did not intend the result reached by the *Pearson* court. *Foreman*, 361 Ill. App. 3d at 148, 836 N.E.2d at 761. Accordingly, we reject *Pearson*'s teaching that the trial court's duty to inform prospective jurors of their "general duties and responsibilities" mandates that the *Zehr* principles are implicitly part of the trial court's obligations under subsection (a). See 177 Ill. 2d R. 431(a).

In the instant case, we find that the *venire* was indeed informed of their general duties and responsibilities during the *voir dire*. In her opening remarks, after introducing the parties and identifying potential witnesses, the trial court judge summarized the charges in the indictment, while cautioning that the indictment was not evidence against the defendant. She told the jurors that defendant is presumed innocent and the State has the burden to prove guilt beyond a reasonable doubt. In highlighting the importance of jury service, the trial judge informed the

jurors that she "put jury duty second only to service in the military." She then proceeded to ask each panel of prospective jurors, as a group, whether they could sign a guilty verdict if the State proved defendant guilty beyond a reasonable doubt and conversely whether they could return a not guilty verdict if the State failed to meet its burden. Additionally, the panels were asked if their members had any problem with the presumption of innocence. True, the court's introductory remarks made no mention of the defendant's right not to testify or present any evidence, but again, defense counsel did not request that those admonishments be given. We conclude that the trial court's comments and questions during jury selection satisfied the requirements of Supreme Court Rule 431, as it then existed.

However, given the recent amendment to Rule 431 (b), our inquiry must nonetheless continue. On March 21, 2007, the Illinois Supreme Court amended subsection (b) by deleting the language "If requested by the defendant," but leaving the remainder of the rule unchanged. Rule 431(b) now provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

1-06-1482

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Thus, amended Rule 431(b) clearly changed the landscape by imposing a *sua sponte* duty upon the trial judge to question each potential juror in accordance with *Zehr's* mandate. Significantly, a juror's understanding and acceptance of the *Zehr* principles no longer hinges upon defense counsel's request.

Defendant contends that the amendment controls the instant appeal. He asserts that we should apply the amended version retroactively because there is nothing in the plain language of the rule that indicates the intended temporal reach of the amendment and because the amendment is clearly procedural in nature. We must therefore resolve whether the amendment should be applied retroactively as urged by defendant.

We begin with the understanding that the retroactivity analysis for supreme court rules is the same as that for statutes. See *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 619-21, 841, N.E.2d 1065, 1070-71 (2006). In *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39, 749 N.E.2d 964, 971-72 (2001), our supreme court adopted the analysis of *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), for determining when new legislation should be applied to existing controversies. In *Landgraf*, the United States Supreme Court recognized the presumption against retroactive legislation: "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511

12

U.S. at 265, 128 L. Ed. 2d at 252, 114 S. Ct. at 1497. Following *Landgraf*, our supreme court directed that the court's first task is to determine whether the legislature has expressly prescribed the statute's proper reach. *Commonwealth Edison*, 196 Ill. 2d at 37, 749 N.E.2d at 970-71. If the legislature clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. If the legislature has not indicated the temporal reach of the amendment, then the court must determine whether applying the statute would have a retroactive impact. If applying the amended version of the law would have that result, the court must presume that the legislature did not intend that it be so applied. *Commonwealth Edison*, 196 Ill. 2d at 38, 749 N.E.2d at 971.

In the case at hand, we find that the Illinois Supreme Court has indeed expressly indicated the temporal reach of amended Rule 431(b). As noted, the order amending the rule was entered on March 21, 2007, however the effective date was delayed until May 1, 2007. In *Commonwealth Edison*, the supreme court held that the postponement of an effective date may, as a general matter, constitute evidence that the legislature intended the amendment to have a prospective application. *Commonwealth Edison*, 196 Ill. 2d at 42, 749 N.E.2d at 973. Similarly, in *People v. Brown*, 225 Ill. 2d 188, 866 N.E.2d 1163 (2007), the supreme court held by delaying the implementation of the relevant provisions of the Juvenile Justice Reform Provisions of 1998 (Pub. Act 90-590, eff. January 1, 1999), "it is clear that the law was intended to have only prospective application." *Brown*, 225 Ill. 2d at 201, 866 N.E.2d at 1170.

Accordingly, we concur in the holdings of our Fourth Division entered earlier this year in *People v. Gilbert*, 379 Ill. App. 3d 106, 882 N.E.2d 1140, (2008), and our Sixth Division in

13

1-06-1482

*People v. Yarbor*, 383 Ill. App. 3d 676, 889 N.E.2d 1225 (2008), that the newly imposed *sua sponte* duty of the trial court to question each potential juror regarding his understanding and acceptance of the *Zehr* principles applies only to *voir dire* conducted on or after May 1, 2007, the effective date of the amendment.

Here, the trial court conducted *voir dire* prior to May 1, 2007. Because the court's *voir dire* properly complied with Rule 431(b), as it then existed, defendant's claim must fail.

Improper and Inflammatory Argument

Defendant maintains that during opening statements and closing arguments, the State repeatedly emphasized to the jury two pieces of evidence: (1) that Martinez was dressed in head-to-toe-camouflage, combat boots, and a hat at the time of the offense; and (2) that Martinez told police he had the gun because he was on a mission. Defendant singles out the prosecutor's opening statement as setting the tone for what he characterizes as improper and inflammatory arguments:

> "You are going to hear about a man dressed head to toe in camouflage, a camouflage shirt, camouflage pants, camouflage gloves, black combat boots, a black knit ski cap with eye holes cut out. *** [T]his man not only was dressed in this camouflage head to toe, this man was armed with a loaded gun. This man was on a mission. This man was not on any mission associated with our United States military. He was not [on] a mission in some foreign land on foreign soil. It was this man dressed head to toe in camouflage, shirt, pants, gloves, combat [boots], makeshift ski mask. It was that guy who was armed with a loaded gun. He was dressed like that and armed with this

14

gun here on the streets of Chicago hiding under the cover of darkness. It was this guy who was on a personal mission."

It is likewise true that throughout the remainder of the opening statement, as well as during closing argument, the State brought up the defendant's clothing 13 additional times and mentioned the word "mission" 24 more times. Defendant did not object to the admission of this evidence at trial and on appeal concedes that it was admissible for the limited purpose of showing that he knew there was a gun in his van. However, inferring that this evidence portrayed him as a man of bad character with a propensity to commit crime, he argues that the prosecutor's repetitive references demonstrate that the State indeed used the evidence for an improper purpose. Notably, although defense counsel did not object to the admission of the "mission" statement, counsel successfully argued in *limine* that the court redact defendant's response to the purpose of the mission: "that he had killed many people in Miami." Given the prejudicial impact of that explanation, the trial court barred its admission and instructed the prosecutors to insure that their witnesses were so informed.

The People maintain that defendant has waived review of this issue by failing to object at trial and failing to include the issue in his post-trial motion. Even if not waived, the State submits that there was nothing improper about the prosecutor's comments. Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue we review *de novo. People v. Graham*, 206 Ill. 2d 465, 474, 795 N.E.2d 231, 237 (2003).

An unbroken line of precedent mandates that a defendant must object to claimed errors at

trial and raise them in his post-trial motions *People v. Banks*, 161 Ill. 2d 119, 143, 641 N.E.2d 331, 342 (1994). *People v. Needham*, 22 Ill. 2d 258, 259, 174 N.E.2d 838, 838 (1961). Otherwise, they are procedurally defaulted or forfeited. See, e.g., *People v. Naylor*, 229 Ill. 2d 584, 893 N.E.2d 653 (2008). Moreover, allegations of a prosecutor's improper argument are waived where they are not specifically identified in defendant's motion for a new trial. *People v. Muschio,* 278 Ill. App. 3d 525, 531, 663 N.E.2d 93, 97 (1996). Nor will general and vague allegations suffice to overcome waiver. *People v. Parchman*, 302 Ill. App. 3d 627, 632, 707 N.E.2d 88, 93 (1998). In the instant case, defendant's post-trial motion generically complained of the State's "prejudicial, inflammatory erroneous statements in closing argument." Such a general objection has been held insufficient to preserve the issue for appeal. *People v. Grant*, 232 Ill. App. 3d 93, 106, 596 N.E.2d 813, 822 (1992). See also *People v. Sargent*, 184 Ill. App. 3d 1016, 1025, 540 N.E.2d 981, 987 (1989). Therefore, we agree with the State that defendant's post-trial motion lacked the specificity to preserve his claim for review.

We also recognize that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). The plain error doctrine permits courts to consider otherwise forfeited claims under certain well-defined circumstances. See *People v. Piatkowski*, 225 Ill. 2d 551, 870 N.E.2d 403, (2007). The doctrine is operative when:

> "(1) a clear or obvious error occurs and the evidence is so closely balanced
>
> that the error alone threatened to tip the scales of justice against the defendant,
>
> regardless of the seriousness of the error, or (2) a clear or obvious error occurs and

that error is so serious that it affected the fairness of defendant's trial and challenged

the integrity of the judicial process, regardless of the closeness of the evidence."

*Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 411.

This "is a narrow and limited exception to the general rule of forfeiture, whose purpose is to

protect the rights of the defendant and the integrity and reputation of the judicial process."

*People v. Allen*, 222 Ill. 2d 340, 353, 856 N.E.2d 349, 356 (2006). If a defendant cannot show

plain error, he cannot override the forfeiture. *Naylor*, 229 Ill. 2d at 593, 893 N.E.2d at 659-60.

The first step in the review, then, is to determine whether any error was committed. *People v.*

*Hudson*, 228 Ill. 2d 181, 191, 886 N.E.2d 964, 971 (2008).

Here, the defendant fails to meet either prong of the plain error doctrine. First, the

evidence clearly is not closely balanced; rather, there is overwhelming proof that defendant

possessed a handgun as charged. Second, defendant's assertion that the errors were so egregious

as to undermine his right to a fair trial has utterly no application unless indeed the prosecutor

committed error. Simply put, there can be no plain error if there is no error. *People v. Herron*,

215 Ill. 2d 167, 184, 830 N.E.2d 467, 478 (2005).

Closing arguments must be viewed in their entirety, and the challenged remarks must be

viewed in context. *People v. Wheeler*, 226 Ill. 2d 92, 122, 871 N.E.2d 728, 745 (2007). "In

reviewing comments made at closing arguments, this court asks whether or not the comments

engender substantial prejudice against a defendant such that it is impossible to say whether or not

a verdict of guilt resulted from them." *Wheeler*, 226 Ill. 2d at 123, 871 N.E.2d at 745. Here, a

review of the opening statements and closing arguments in their entirety and in proper context,

fails to establish that the prosecutors' comments were so egregious as to fall within the second prong of the plain error analysis. In the absence of plain error, the procedural default may not be excused. *People v. Keene*, 169 Ill. 2d 1, 18, 660 N.E.2d 901, 910 (1995).

In presenting a closing argument, a prosecutor is allowed a great deal of latitude and is entitled to argue all reasonable inferences from the evidence. *People v. Johnson*, 146 Ill. 2d 109, 143, 585 N.E.2d 78, 93 (1991). Here, the State submits that its remarks constituted a reasonable characterization of the evidence, particularly the circumstances surrounding defendant's arrest. The prosecutors' comments directed the jurors to recall the testimony of Detective Healey that when defendant was placed into custody he was wearing camouflaged clothing that defendant admitted he was on a mission, and that he possessed the gun for that purpose. The State posits that the comments complained of were relevant not only to explain the circumstances of the arrest, but also to show that defendant was indeed aware of the presence of the weapon in his vehicle.

Defendant nonetheless argues that the prosecutors' comments constituted an inflammatory appeal to the fears of the jury and shed no light on the paramount question of whether he was guilty beyond a reasonable doubt. The repetitive reference to his clothing and the "mission" in reality were offered to portray him as a man of bad character with a propensity to commit crimes. However, defendant fails to identify the crime inferred by the comments, if indeed one was suggested. Nor should we infer that a prosecutor intends an ambiguous remark to have its most damaging meaning. See *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47, 40 L. Ed. 2d 431, 439, 94 S. Ct. 1868, 1873 (1974).

18

1-06-1482

Here, as in *People v. Nieves*, 193 Ill. 2d 513, 534, 739 N.E.2d 1277, 1287 (2000), even if it could be said that the prosecutors' remarks were improper, we would still find reversal unwarranted. Given the overwhelming evidence of defendant's guilt for the charged offenses, it is reasonable to conclude that the jury would have returned a guilty verdict even in the absence of the prosecutors' comments. Even assuming we were to find error, because the defendant was not prejudiced thereby, any error would have been harmless.

Entry of Judgment on Both Counts of the Charged Offense

As noted, defendant was charged with two offenses: (1) unlawful use of a weapon by a felon under Section 24-1.1(a) of the Criminal Code of 1961 (720 ILCS 5/24-1.1(a) (West 2006)), and (2) aggravated unlawful use of a weapon based on carrying an incased, loaded and immediately-accessible firearm under Section 24-1.6(a) (720 ILCS 5/24-1.6(a)(1) (West 2006)). The jury returned verdicts of guilty on both counts and the court imposed concurrent 12-year sentences.

The evidence at trial established that the police found but one gun in defendant's car. Yet, possession of that single weapon was used to support the conviction entered on each count. The parties submit, and we agree, that the one-act, one-crime rule dictates that a single physical act cannot give rise to multiple convictions. *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977). When a defendant is convicted of more than one crime arising out of the same act, the court must vacate all of the convictions, except for the most serious one. *People v. Lee*, 213 Ill. 2d 218, 226-27, 821 N.E.2d 307, 312 (2004).

In the instant case, unlawful use of a weapon by a felon is the most serious offense in that

19

it carries a greater range of sentence than aggravated unlawful use of a weapon. Accordingly, the court agrees that defendant's conviction and sentence for aggravated unlawful use of a weapon should be vacated.

## The Violent Crime Victims Assistance Fee

Defendant additionally submits that the trial judge improperly imposed a $20 Violent Crime Victims Assistance fine pursuant to Section 10(c)(2) of the Violent Crime Victims Assistance Act Fund (725 ILCS 240/10(c)(2) (West 2006)). The People concur in defendant's argument and agree that the imposition of this fine was improper and should be vacated.

The Violent Crime Victims Assistance Fund Act states that an additional penalty shall be collected from any defendant convicted of a felony. 725 ILCS 240/10(b) (West 2004). However, the statute goes on to state: "When any person is convicted in Illinois *** of an offense listed below *** and no other fine is imposed, the following penalty shall be collected." 725 ILCS 240/10(c) (West 2004). In this case, defendant was also ordered to pay a trauma fund fine. Therefore, because another fine was imposed, the Violent Crime Victims Assistance fine was improper.

## The Criminal/Traffic Conviction Surcharge

Finally, defendant contends that the trial court erred in failing to afford him a $5-per-day sentence credit to satisfy his $4 Criminal/Traffic Conviction Surcharge assessment. The People concur in defendant's analysis and agree that defendant is entitled to satisfaction of the $4 surcharge by a $5-a-day credit for time spent in custody.

Chicago police arrested defendant on December 3, 2004. He remained in custody

through trial and sentencing. On April 4, 2006 the judge sentenced defendant to 12 years of imprisonment in the Illinois Department of Corrections and imposed fines and fees in the amount of $639. The fines and fees order included a $4 criminal/traffic surcharge.

In *People v. Jones*, 223 Ill. 2d 569, 861 N.E.2d 967 (2006), the Illinois Supreme Court held that the criminal/traffic conviction surcharge is subject to offset. Accordingly, we agree with the parties that defendant is entitled to a $5 credit to satisfy the $4 criminal/traffic conviction surcharge for the time he spent in custody prior to sentencing.

CONCLUSION

For the foregoing reasons, we affirm defendant's conviction for unlawful use of a weapon by a felon and vacate the conviction for aggravated unlawful use of a weapon. We also direct the Clerk of the Circuit Court to amend the fines and fees order to eliminate the $20 Violent Crime Victim Assistance fine and reflect a $4 credit for time spent in custody. Additionally, we grant the People costs and incorporate as part of our judgment and mandate a fee of $100 for defending this appeal.

Affirmed in part and vacated in part, as modified.

FITZGERALD SMITH, P.J., with O'MARA FROSSARD, J., concur.

21