# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Fountain*, **2011 IL App (1st) 083459-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY FOUNTAIN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-08-3459 |
| Filed | December 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was properly found guilty of unlawful possession of 1.3 grams of a controlled substance with intent to deliver, regardless of his claim that the weight element was not proved beyond a reasonable doubt due to the forensic chemist's failure to testify that each of the packets taken from defendant was individually weighed, and, furthermore, although the appellate court rejected defendant's contention that Supreme Court Rule 431(b) imposes a *sua sponte* duty on the trial court obviating the need for an objection to preserve an alleged error, the court also disagreed with defendant's argument that the trial judge's inquiry as to whether the jurors had a "problem" or "disagreed" with the *Zehr* principles rather than understood and accepted them amounted to a failure to comply with Rule 431(b), but the DNA fee imposed on defendant was vacated on the ground that the fee was assessed in an earlier conviction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-15592; the Hon. John T. Doody, Jr., Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on Appeal    Michael J. Pelletier, Patricia Unsinn, Alan D. Goldberg, and Emily S. Wood, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy Watrobakern, and Martin Syvertsen, Assistant State's Attorneys, of counsel), for the People.

Panel    JUSTICE GARCIA delivered the judgment of the court, with opinion.
Presiding Justice R. Gordon and Justice McBride concurred in the judgment and opinion.

## OPINION

¶ 1    Following a guilty verdict by a jury, the defendant Bobby Fountain was sentenced to four years' imprisonment for Class 1 possession with intent to deliver 1.3 grams of a substance containing heroin. On February 11, 2011, we issued an opinion affirming the defendant's conviction against three claims: (1) the State failed to prove the weight element of the charged offense beyond a reasonable doubt because the forensic chemist did not expressly testify to having individually tested each of the foil packets containing the suspected heroin to meet the one-gram threshold; (2) the circuit court judge failed to comply with Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)); and (3) the defendant was improperly assessed the DNA fee. The Illinois Supreme Court directed that we vacate our opinion and reconsider in light of *People v. Marshall*, 242 Ill. 2d 285 (2011). In *Marshall*, our supreme court ruled the DNA fee statute permits a DNA analysis fee only "where that defendant is not currently registered in the DNA database." *Id.* at 303. The court reversed "the appellate court's judgment, and vacate[d] that portion of the trial court's order requiring defendant to submit an additional DNA sample and requiring him to pay the $200 DNA analysis fee." *Id.* Upon reconsideration, we affirm the defendant's conviction, but vacate the DNA fee.

¶ 2    BACKGROUND

¶ 3    On June 26, 2007, the defendant was arrested and charged with possession of at least 1 but less than 15 grams of a substance containing heroin with intent to deliver (720 ILCS 570/401(c) (West 2008)), and a cocaine-related offense, the conviction of which he does not challenge. At the defendant's jury trial, the following material evidence to this appeal was introduced.

¶ 4    Officer Keith Karczewski of the Chicago police department testified that on June 26, 2007, he was conducting a narcotics mission with his partners John Dolan and Thomas Harris. At 12:30 p.m., he was driving a covert van in the area of 4231 West Madison in

Chicago when he saw the defendant on the sidewalk yelling "rocks, blows, rocks, blows." Based on his experience, Officer Karczewski understood "rocks" to mean crack cocaine and "blows" to mean heroin. Officer Karczewski parked the van on the opposite side of the street across four lanes of traffic, and observed the defendant for approximately 15 minutes. During his surveillance, Officer Karczewski observed a similar event on three separate occasions: a man would approach the defendant, engage in a brief conversation, and exchange United States currency for a small item the defendant retrieved from a plastic bag in his front right pocket. Because he believed the defendant had engaged in narcotics transactions, Officer Karczewski instructed Officers Dolan and Harris to approach the defendant.

¶ 5      Officer John Dolan testified that when he and Officer Harris approached, the defendant volunteered that he "had a jab of blows and a couple of rocks" in his right front pocket, which he was selling "for a cat named Furley." Officer Dolan reached into the defendant's right front pocket and retrieved a large plastic bag. Inside the large bag was a smaller bag holding nine foil packets Officer Dolan believed to be heroin, as well as two smaller bags Dolan believed to be crack cocaine. Officer Dolan also recovered $180 from the defendant's right front pocket. Officer Dolan testified that he maintained constant care and control over the items until he transferred custody of the items to Officer Karczewski at the police station.

¶ 6      Officer Karczewski inventoried the cocaine, heroin, and currency under separate, unique inventory numbers. He placed each inventoried item into a larger evidence bag, heat-sealed the bag, and placed it into a safe until the bag was transported to the crime lab.

¶ 7      Linda Rayford, a forensic chemist with the Illinois State Police, duly qualified as an expert, testified she received the heat-sealed evidence bag on July 3, 2007. She opened the evidence bag and removed the smaller bag containing nine foil packets of suspected heroin. Chemist Rayford testified she weighed the nine packets separately and determined the powder weighed 1.3 grams. She then conducted a preliminary color test and a confirmatory test, both of which indicated the presence of heroin. Chemist Rayford opined the nine foil packets contained 1.3 grams of heroin.

¶ 8      The defendant testified that on June 26, 2007, he worked as a temporary employee at Pennant's Bakery until 5 a.m., then walked home and took a nap. When he awoke, the defendant walked to the Family Dollar store on the 4200 block of west Madison to shop. He then walked to a nearby barbershop to get his hair cut, but the shop was closed. As he waited for the shop to open, he spoke to a man outside the shop. The defendant testified he never exchanged items with anyone on the street, and never yelled "rocks" or "blows." He also denied telling Officer Dolan that he was selling drugs "for a cat named Furley."

¶ 9      The jury found the defendant guilty of possession with intent to deliver at least 1 but less than 15 grams of a substance containing heroin. The trial judge sentenced the defendant to four years' imprisonment. The defendant was also ordered to pay certain fines and fees, including a $200 DNA fee pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2008)). This appeal followed.

¶ 10                                              ANALYSIS

¶ 11      The defendant initially contends reasonable doubt remains that he actually possessed 1.3

grams of heroin because the forensic chemist was never questioned regarding the exact testing procedures she followed. In the absence of explicit testimony from the chemist that she actually tested each of the nine foil packets of powder recovered from the defendant's pocket, he contends his conviction must be reduced to possession of less than one gram of heroin with intent to deliver, a Class 2 felony. See 720 ILCS 570/401(d) (West 2008).

¶ 12                                  Sufficiency of Evidence

¶ 13    When confronted with a challenge to the sufficiency of the evidence, a reviewing court does not retry the defendant; rather, it determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) (Emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard reflects that it is the jury's province to determine the credibility of witnesses, assign weight to their testimony, and resolve conflicts in the evidence. *Ross*, 229 Ill. 2d at 272. To overturn a conviction, the evidence must be so improbable or unsatisfactory that reasonable doubt of the defendant's guilt remains. *Ross*, 229 Ill. 2d at 272. Reasonable doubt exists as a matter of law when the State fails to prove an essential element of the offense. "When a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996).

¶ 14    When suspected illegal drugs are seized in the form of powder in separate packets, a sufficient number of the seized packets must be tested to establish that the defendant possessed the requisite amount of the illegal drug to prove the weight element beyond a reasonable doubt. *Jones*, 174 Ill. 2d at 429 ("a portion from each container or sample must be tested in order to determine the contents of each container or sample"); *cf. People v. Clinton*, 397 Ill. App. 3d 215, 223 (2009) (chemist improperly "combined six packets of suspected heroin before determining whether *each* of the packets did, in fact, contain heroin" (emphasis added)). In other words, the trier of fact may not infer beyond a reasonable doubt that the powdered substance present in the weighed but untested packets is identical to the substance of the tested packets because powder is not homogenous. *Jones*, 174 Ill. 2d at 429 ("random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested").

¶ 15    In *Jones*, the defendant was arrested while in possession of five plastic packets, each "containing a white rocky substance." *Jones*, 174 Ill. 2d at 428, 430. The State's evidence established that two of the five packets tested positive for cocaine; the remaining three packets, however, were not tested. *Jones*, 174 Ill. 2d at 428. According to the chemist, the total weight of all five packets was 1.4 grams, but the two packets actually tested weighed only 0.59 grams. *Jones*, 174 Ill. 2d at 428. The defendant was "convicted of possession with intent to deliver 1.4 grams of cocaine." *Jones*, 174 Ill. 2d at 428.

¶ 16    On appeal, our supreme court affirmed the appellate court's judgment to reduce the

defendant's conviction in line with the weight of the substance actually tested. *Jones*, 174 Ill. 2d at 430. The supreme court held that no inference could be drawn concerning the composition of the three untested packets. *Jones*, 174 Ill. 2d at 430. The court reasoned that "the five packets containing loose substances cannot be equated with identically marked and stamped tablets, pills, or capsules." *Jones*, 174 Ill. 2d at 430. Absent a chemical analysis, it is "pure conjecture" that the contents of the three untested packets also contained cocaine, which is insufficient to prove beyond a reasonable doubt that the defendant possessed at least one gram of the illegal drug. *Jones*, 174 Ill. 2d at 430.

¶ 17    The defendant contends that we should reach the same outcome as in *Jones*. He argues in his main brief: "it is impossible to know if each packet contained heroin, and thus whether it was appropriately included in the total weight." As in *Jones*, the defendant contends his conviction should be reduced to the lesser included offense.

¶ 18    There are, however, substantial differences between this case and *Jones*. Here, the chemist expressly testified that she weighed each of the nine packets separately. "I made sure that each was weighed separately." In contrast to *Jones*, we have no testimony from chemist Rayford that she tested less than all nine foil packets, though the parties acknowledge that chemist Rayford's testimony on direct examination, describing the preliminary and confirmatory tests on the suspected heroin, is ambiguous as to the number of packets actually tested:

> "Q. Can you tell us what's a preliminary test?
>
> A. Preliminary tests are tests you do to look for a certain substance.
>
> Q. And did you do that in this case?
>
> A. Yes.
>
> Q. Did it result in any kind of finding?
>
> A. Yes. The preliminary tests were indicative of heroin.
>
> * * *
>
> Q. After you conducted this preliminary test, you said that you did a confirming test?
>
> A. Yes. A confirmatory analysis.
>
> Q. What was that?
>
> A. The GC mass spect. The gas chromatography mass spectrometry.
>
> Q. Can you please explain that to the ladies and gentlemen of the jury ***?
>
> A. That's when you take a small amount of the sample, you put it into a glass vial with a reagent in it and then you put it on an instrument. And the instrument reads what's in the vial and gives you a printout.
>
> Q. And based on that, after running this test, were you able to determine if there was a unique substance in People's Exhibit 1?
>
> A. Yes.
>
> Q. What was that?
>
> A. It was heroin.

\* \* \*

> Q. Based on your education, your background, on the test that you performed on People's Exhibit 1, did you form an opinion as to what the controlled substance was in People's Exhibit 1?
>
> A. Yes, I did.
>
> Q. What was that opinion?
>
> A. Positive for heroin.
>
> Q. And what was the amount?
>
> A. 1.3 grams."

¶ 19 While chemist Rayford testified that "preliminary tests" were performed, suggesting that such tests were performed on more than one foil packet, at other times, she spoke in the singular: she testified to having conducted "[a] confirmatory analysis." To support their contrary positions, each party focuses on the first step chemist Rayford described to perform the chemical analysis: "you take a small amount of the sample."

¶ 20 The defendant contends chemist Rayford's testimony that a confirmatory test is conducted by taking "a small amount of the sample" suggests that she tested only a random number of the nine foil packets. He does not expressly assert that commingling occurred. At the same time, based on the record before us, the defendant cannot tell us the number of packets that were tested at "random." He simply asserts the chemist tested too few.

¶ 21 The State on the other hand contends that chemist Rayford's testimony that she would have taken "a small amount of the sample" to perform the preliminary and confirmatory tests confirms that all nine packets were tested.

¶ 22 As each party acknowledges, chemist Rayford never explicitly testified to the number of packets actually tested. Thus, the dispositive question before us is whether the evidence permitted the jury to infer beyond a reasonable doubt that the seized packets contained 1.3 grams of heroin or would such an inference be based on "pure conjecture" under *Jones*. Stated differently, in light of the evidence presented, did the jury act reasonably in finding him guilty of possession with intent to deliver 1.3 grams of heroin. See *Ross*, 229 Ill. 2d at 272 ("because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision").

¶ 23 The record evidence in this case is unlike the evidence in *Jones*, where the chemist expressly testified that he tested only 2 of the 5 seized packets. Nor is this case like *Clinton*, where the chemist testified that he commingled the seized substances before he conducted the chemical tests. Finally, this case is unlike *People v. Adair*, 406 Ill. App. 3d 133, 135 (2010), where defense counsel filed a motion *in limine* seeking to bar the chemist from testifying to the weights of the controlled substances in the seized pills because the testing procedure commingled nonhomogenous pills.

¶ 24 In this case, defense counsel did not challenge the disputed scientific evidence pretrial; nor does the defendant point to record testimony of the chemist that established the legal shortcomings of the scientific analysis. Rather, the defendant claims the ambiguous testimony of chemist Rayford regarding the number of packets she tested fails to prove the

weight element beyond a reasonable doubt. We understand the defendant to contend that the reasonable doubt standard compels a court of review to view ambiguous testimony as necessarily favoring the defense.

¶ 25    Under our adversarial criminal justice system, each party must challenge testimony that might lead the trier of fact to find in favor of the other side. See *People v. Wheeler*, 151 Ill. 2d 298, 310-11 (1992) ("We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law." (Internal quotation marks omitted.) (quoting *United States v. Noble*s, 422 U.S. 225, 230-31 (1975), quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974))). Under our system, we allow the jury to decide on the inferences to be drawn from ambiguous testimony. See *People v. McDonald*, 168 Ill. 2d 420, 447 (1995) (where evidence is capable of producing conflicting inferences, "it is best left to the trier of fact for proper resolution").

¶ 26    The general rule regarding review of a guilty verdict reflects the deference accorded to the jury's assessment of the evidence: "When reviewing a challenge to the sufficiency of the evidence, this court considers *** the evidence in the light most favorable to the State ***." *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). Thus, it falls to the defendant to challenge ambiguous testimony during the course of the trial or else risk the application of this rule on appeal.

¶ 27    The prosecution, too, faces the prospect of not meeting its burden if the evidence establishes that proper testing procedures were not followed by the chemist testifying on behalf of the State. See *Jones*, 174 Ill. 2d at 430 (with the untested packets in its possession, the State was in the best position to answer whether those packets "contained cocaine or mere look-alike substances"); *Adair*, 406 Ill. App. 3d at 142 (it was the State's responsibility to adduce evidence consistent with its theory of guilt; "we decline the State's invitation to speculate" in the absence of such evidence). To remind the State of the obvious, had the chemist been asked to detail the testing procedure she followed regarding each of the seized packets, this issue likely would not be before us.

¶ 28    These admonitions aside, established authority regarding inferences guides our decision here. "An inference is a factual conclusion that can rationally be drawn by considering other facts. Thus, an inference is merely a deduction that the fact finder may draw in its discretion, but is not required to draw as a matter of law." *People v. Funches*, 212 Ill. 2d 334, 340 (2004). A "reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). However, "if only one conclusion may reasonably be drawn from the record, a reviewing court must draw it even if it favors the defendant." *Cunningham*, 212 Ill. 2d at 280. Thus, the rules regarding inferences do not permit the defendant's assertion that under the reasonable doubt standard we must draw from ambiguous testimony only the inference that favors the defendant.

¶ 29    Nor does the record before us support the defendant's claim that chemist Rayford tested a random number of packets, whose total weight was almost certainly less than a gram.[1]

---

[1]If each packet contained approximately the same amount of powder, or approximately .14 grams, at least 8 packets needed to be tested to reach the one-gram threshold.

Unlike the testimony in *Jones*, the defendant's claim here that only a random number of packets were tested amounts to conjecture.

¶ 30        Taking the evidence in the light most favorable to the prosecution, which includes allowing all reasonable inferences from the evidence consistent with the outcome, the jury's verdict that the defendant was guilty of possession with intent to deliver 1.3 grams of a substance containing heroin was reasonable. Chemist Rayford explicitly testified that she weighed each foil packet individually. We will not presume the chemist took inconsistent approaches in weighing the seized packets and in testing the seized packets for a controlled substance. See *People v. Miller*, 218 Ill. App. 3d 668, 673 (1991) ("[W]here the record is unclear, we will not presume that an improper procedure was performed."). The jury was free to infer from the testimony regarding the weighing process that chemist Rayford followed the same approach in performing her chemical analysis; that is, she tested each foil packet individually. See *McDonald*, 168 Ill. 2d at 447 (it is for the jury to determine which inference to draw from ambiguous evidence).

¶ 31        Chemist Rayford also described the confirmatory test she would have performed on the seized substance: "[Y]ou take a small amount of the sample, you put it into a glass vial with a reagent in it and then you put it on an instrument. *** [T]he instrument reads what's in the vial." From this testimony, the jury could have reasonably concluded that each seized packet constituted a "sample," as chemist Rayford used that term (consistent with how that term has been used by our courts), which meant she tested each sample. See *Jones*, 174 Ill. 2d at 429 ("a portion from each *** [seized] sample must be tested in order to determine the contents of each *** sample").

¶ 32        In light of the deference owed to the jury's verdict, especially when ambiguous testimony is before it, we reject the defendant's contention that the State failed to prove the weight element of the charged offense beyond a reasonable doubt. Absent evidence in the record to the contrary, the jury could reasonably infer beyond a reasonable doubt that each foil packet was tested separately, which meant the defendant possessed with intent to deliver 1.3 grams of heroin.

¶ 33                                                    *Voir Dire*

¶ 34        The defendant next contends the circuit court failed to comply with Rule 431(b) in questioning the venire, a claim we would ordinarily review *de novo*. *People v. Thompson*, 238 Ill. 2d 598, 606 (2010) (compliance with a supreme court rule is reviewed *de novo*). However, the defendant neither objected to the trial judge's *voir dire* nor claimed this as error in his posttrial motion, thus forfeiting review of this claim. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 35        Yet, the defendant does not assert plain error to compel our review. *Thompson*, 238 Ill. 2d at 611 ("When a defendant has forfeited appellate review of an issue, the reviewing court will consider only plain error."). Rather, he asserts that because Rule 431(b) imposes a *sua sponte* duty on the trial judge, no objection is required to preserve the alleged error: "Thus, requiring an objection would be contrary to the purpose of the amendment [imposing a *sua sponte* duty on the trial judge.]"

¶ 36    Case law is universally to the contrary. Outside the context of plain error, "[a]n unbroken line of precedent mandates that a defendant must object to claimed errors at trial and raise them in his posttrial motions. [Citations.] Otherwise, they are procedurally defaulted or forfeited." *People v. Martinez*, 386 Ill. App. 3d 153, 163 (2008) (citing *People v. Banks*, 161 Ill. 2d 119 (1994), and *People v. Naylor*, 229 Ill. 2d 584 (2008)). Nonetheless, while we do not adopt the defendant's novel position that Rule 431(b) makes a claim of plain error unnecessary, we address his contention that the *voir dire* conducted by the trial judge was reversible error to give guidance to the circuit court.

¶ 37    Rule 431(b) requires the trial judge to ask each potential juror "whether that juror understands and accepts" four essential principles of law:

"(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 38    In this case, Judge Doody explained each of the first three principles to the jury venire and, after each explanation, asked whether any juror had "a problem with" or "disagree[d] with" each principle of law. Judge Doody then explained that the defendant did not have to testify, and asked the venire if they would "hold the fact that a Defendant may not testify at trial against that Defendant?" No prospective juror expressed a disagreement with any of the four principles of law.

¶ 39    In his main brief, the defendant explains the basis for his claim of error: "The judge in this case failed to comply with these obligations by failing to ask whether the jury both understood and accepted the [Rule 431(b)] principles, instead asking whether anyone had a 'problem' or 'disagreed' with the basic principles." In his reply brief, the defendant argues "the failure to ensure that the jury understands and accepts the [Rule 431(b)] principles is a failure to ensure that the defendant receives a fair and impartial jury."

¶ 40    The defendant does not explain, however, why the circuit court's inquiry fell short of the rule's requirements, other than to argue that the trial judge's failure to use the words "understand" and "accept" rendered the *voir dire* "ineffective for the purpose of determining whether each juror understood and accepted the [Rule 431(b)] principles." Nor does the defendant explain the manner in which he was prejudiced by the trial judge's plain talk. For his claim of reversible error, the defendant relies solely on the possibility that his jury may not have been "fair and impartial" in absence of literal compliance with the language in Rule 431(b).

¶ 41    We find the defendant's concern over whether his jury was fair and impartial misplaced. The defendant fails to consider defense counsel's role in selecting the jury that was seated to hear his case. If there was a problem with the judge's *voir dire*, defense counsel was free to inquire directly of the venire to ensure that only "fair and impartial" jurors were selected. See *People v. Brown*, 388 Ill. App. 3d 1, 10 (2009) (no reason to forego the application of the forfeiture rule when "the defendant [had] the opportunity to ferret out any bias among the remaining potential jurors through *voir dire* questioning to ensure his right to a fair trial").

¶ 42 Suffice it to say, Judge Doody did not commit reversible error in his questioning of the venire. See *People v. Glasper*, 234 Ill. 2d 173, 201 (2009) ("We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased ***.").

¶ 43 That said, the supreme court recently ruled that Rule 431(b) must be strictly followed: "Rule 431(b) *** mandates a specific question and response process. The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule." *Thompson*, 238 Ill. 2d at 607. Thus, after *Thompson*, it is likely error, though not reversible error under our analysis in this case, not to ask prospective jurors to respond to separate questions whether he or she "understands" and "accepts" each of the four principles. Modification to the language in Rule 431(b) is discouraged, much as modification of pattern jury instructions is discouraged. See *People v. Bannister*, 232 Ill. 2d 52, 87 (2008) (State's modified instruction should not have been used "until this court's Committee on Pattern Jury Instructions in Criminal Cases formally revises this series of instructions").

¶ 44 DNA Fee

¶ 45 Finally, the defendant contends that Judge Doody's imposition of the DNA fee must be vacated because he was assessed the same fee in an earlier conviction. In *Marshall*, the supreme court agreed with the defendant's reading of the DNA analysis fee statute that it permits the $200 fee only "where that defendant is not currently registered in the DNA database." *Marshall*, 242 Ill. 2d at 303. We therefore vacate the $200 DNA analysis fee imposed on the defendant.

¶ 46 CONCLUSION

¶ 47 In light of the record evidence, the jury was reasonable in finding the defendant guilty of possession with intent to deliver 1.3 grams of a substance containing heroin. In the absence of direct evidence to the contrary, we will not presume the State chemist failed to test each of the nine foil packets. No reversible error occurred in the *voir dire* of the prospective jurors by asking whether they had "a problem with" or "disagree[d] with" the four principles of law of Rule 431(b). Nonetheless, the circuit court must strictly follow Rule 431(b) to avoid a finding of trial court error. Finally, we vacate the $200 DNA analysis fee.

¶ 48 Affirmed in part and vacated in part.